ESTATE OF ARTHUR D. CRONIN, IRENE E. CRONIN, EXECUTRIX, AND IRENE E. CRONIN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7127. Promulgated December 30, 1946.

*William C. Allee, Esq.*, and *J. H. Amick, C. P. A.*, for the petitioners.

*A. J. Friedman, Esq.*, for the respondent.

OPINION.

HILL, *Judge*: *Insurance policies.*—Respondent contends that the transferred insurance policies are includible in decedent's estate as transfers made in contemplation of or intended to take effect in possession or enjoyment at or after decedent's death within the meaning of section 811 (c) of the Internal Revenue Code.[1] Petitioner contends that the policies were not transferred in contemplation of death, but were transferred for reasons associated with life, and that the transfers were not to take effect at or after death, but were absolute transfers when made. We agree with respondent that the transfers in question were made in contemplation of death.

The dominant purpose of the contemplation of death provision of section 811 (c) is to reach substitutes for testamentary dispositions and thus prevent evasion of estate tax. *United States* v. *Wells*, 283 U. S. 102. The general scope and meaning of this provision was recently summarized in *City Bank Farmers Trust Co.* v. *McGowan*, 142 Fed. (2d) 599, as follows:

Little has been added by the Supreme Court to what was said as to the phrase, "in contemplation of death", in *United States* v. *Wells*, 283 U. S. 102, 51 S. Ct. 446, 75 L. Ed. 867, which remains our authoritative guide. * * * Its outlines were indeed not sharp, or intended to be sharp, but some things are clear. Such a gift need not be in contemplation of imminent death; the section applies to gifts made by the young and healthy, as well as by the old and infirm. It covers "substitutes for testamentary dispositions". If they are such "substitutes," the test is the donor's motive, which "must be of the sort which leads to testamentary dispositions" (page 117 of 283 U. S., page 451 of 51 S. Ct., 75 L. Ed. 867). Moreover, even though they be "substitutes" and the motive be of that "sort", the donor must not be also actuated by a "dominant" motive of some other kind, which was left vague then, and has not yet been defined. * * *

We are persuaded by the facts and circumstances of this case that the transfers in question were substitutes for testamentary dispositions and were primarily actuated by motives of the sort which lead to testamentary dispositions. The transfers were grouped in time with the execution of decedent's will. On August 26, 1935, decedent transferred the eight Union Central policies. On September 3 he transferred the three Minnesota insurance policies. On September 12 the New York policy was transferred. Decedent made his will on October 22, 1935. On November 12 and 22 instructions were given

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \* \* \*

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT DEATH.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death \* \* \*.

concerning the settlement of the five Northwestern policies which were transferred November 23. Directions concerning the settlement of the three Minnesota policies were given December 4. Thus, during a period of less than five months decedent established a plan for the devolution of his entire estate. It is difficult for us to believe that the testamentary motives which prompted decedent to execute his will did not also prompt the transfers of the insurance policies. We are satisfied that the transfers were component parts of an integrated testamentary plan. This conclusion is further supported by the fact that the transfers in question were not part of a previously established or followed donative scheme. We consider it also noteworthy that the provisions contained in the insurance settlement directions are strikingly similar to the trust provisions contained in the will. In addition to these circumstances is the fact that the value of the transferred insurance policies at decedent's death was more than five times as great as the net amount returned as subject to the basic estate tax. *Schoenheit* v. *Lucas*, 44 Fed. (2d) 476; *McClure* v. *Commissioner*, 56 Fed. (2d) 548.

It is significant too, in our opinion, that the subject matter of the transfers, that is, the insurance policies, was inherently testamentary in nature.[2] We appreciate that the testamentary nature of the thing transferred does not necessarily mean that the motive actuating its transfer is also testamentary in nature. Nevertheless, we do not think the testamentary nature of the thing transferred can properly be ignored altogether. We must presume that decedent intended to achieve the results which would ordinarily flow from the irrevocable transfers of life insurance policies. Thus, the inherent testamentary nature of such policies may and, in this case we think, does throw significant light on the motive actuating the transfers. In the instant case the parties considered and intended that the most valuable right transferred was the right to receive the proceeds of such policies at decedent's death. It is true that other rights susceptible of exercise, consumption, and enjoyment during the decedent's life were transferred, but the parties did not intend that these rights be so enjoyed. The right to borrow money on the policies, for instance, was exercised not for the purpose of consuming or enjoying such money during decedent's lifetime, but for the purpose of paying premiums and thus protecting and enhancing the real subject of the transfer, to wit,

---

[2] In this connection it is significant to note that Congress, in amending section 811 (g) of the code by section 404 of the Revenue Act of 1942, recognized the testamentary nature of insurance. The report of the House Committee on Ways and Means (H. R. Rept. No. 2333, 77th Cong., 2d sess., July 14, 1942, p. 57) stated in part as follows:

"Recognizing the testamentary nature of insurance on the life of the decedent, both where premiums are paid, directly or indirectly, by him and where he possessed at the time of his death some incident of ownership, your Committee proposes to include all proceeds of such insurance in the gross estate."

the right to receive the proceeds at decedent's death. Thus, it seems apparent to us that the rights acquired by decedent's wife were not intended to be exercised or enjoyed during the decedent's lifetime except in so far as necessary to preserve and enhance the ultimate right to proceeds at decedent's death. Consequently, the intended operation of the transfers closely approximated that of a testamentary disposition in that no real benefit or enjoyment was intended to be realized until decedent's death. See *Updike* v. *Commissioner*, 88 Fed. (2d) 807; *Vanderlip* v. *Commissioner*, 155 Fed. (2d) 152; *First Trust & Deposit Co.* v. *Shaughnessy*, 134 Fed. (2d) 940. Under all of these circumstances we are convinced that the transfers of the insurance policies were essentially substitutes for testamentary disposition, actuated by motives of the sort which lead to such disposition.

Petitioner argues that decedent's dominant motive for the transfers was to prevent himself from assigning such policies to the coal company or otherwise similarly subjecting them, by his own actions, to the hazards of the coal company's business. We are not persuaded by this argument. In the first place, we are not thoroughly convinced by the evidence that decedent's business was of such a kind or was at such a juncture as to prompt decedent to make such transfers predominantly for protective reasons. In the second place, the desire to protect the policies from business hazards and creditors is not necessarily inconsistent with or hostile to the desire to make a testamentary disposition. The desire to make a testamentary disposition may well include a desire to protect the subject matter of such disposition. In our opinion the desire to protect the policies from business risks was incidental and subservient to the dominant desire to make a testamentary disposition. We hold, therefore, that the net value [3] of the insurance policies in question, with proper adjustments for premium refunds and loans and less exemption, is includible in decedent's estate. *Vanderlip* v. *Commissioner, supra; First Trust & Deposit Co.* v. *Shaughnessy, supra.*

Petitioner argues that respondent has the burden of proving that the transfers were made in contemplation of death. On brief petitioner states in this connection:

* * * The claim of the Commissioner is expressed in the following language: "It is held that the insurance policies transferred to the decedent's wife, Irene E. Cronin, should be included in the decedent's gross estate as transfers intended to take effect at death within the meaning of *Section 811 (c) of the Internal Revenue Code.*" Throughout the proceedings which led up to the fil-

---

[3] Petitioner does not raise the question of whether the value of the insurance should be reduced by an amount based on the ratio which Irene's premium payments bear to the total cost of the policies. See *Liebmann* v. *Hassett,* 148 Fed. (2d) 247. Nor has sufficient evidence been introduced to enable us to consider this question on our own initiative. We therefore accept the stipulated net value of the policies as adjusted for refunds and loans as the proper includible value.

ing of the petition in the Tax Court the Commissioner had taken the position that the transfer of the insurance policies was in contemplation of death. In the filing of the petition it was recognized that the Commissioner would desire to litigate this question to the end that there might not be a necessity for amended pleadings the issue of "in contemplation of death" was framed in the pleadings. But inasmuch as this is not an issue raised by the explicit terms of Exhibit A, attached to the petition, the burden of proof, it is submitted, is upon the Commissioner and his position is not strengthened by the theory that the deficiency notice is prima facie correct. * * *

Paragraph VIII of the petition is in part as follows:

The facts upon which petitioners rely as the basis of this proceeding are as follows:

* * * (f) During, or about, the period from August to December of the year 1935, decedent Arthur D. Cronin, contemplating certain business activities and for the immediate financial independence of his family, and not in contemplation of death, made a gift of the insurance policies here in question to his wife, Irene E. Cronin, * * *

The allegation in (f) above is denied in respondent's answer. In his opening statement at the hearing petitioner said:

There is also an issue framed between us as to whether or not the conveyances were in contemplation of death. We expect to show that neither were the transfers made in contemplation of death, nor were they intended to take effect at or after death. I will come back to that in a minute.

* * * * * * *

As far as the in-contemplation-of-death feature is concerned, we expect to show that in 1935 Mr. Cronin was engaged in many activities. He was a tremendously active, alert individual and at the beginning of 1935, as that year opened, he found that there were three problems which were additional to all his other problems and which were abnormal and unusual.

Petitioner apparently concedes that there is no element of surprise or unfairness in the introduction of the contemplation of death issue. Petitioner presented this issue in the pleadings, introduced evidence on it, and argued it on brief. Petitioner's position seems to be based solely on respondent's failure to specifically mention contemplation of death in the notice of deficiency. However, we are convinced that the evidence of record affirmatively establishes that the insurance policies were transferred by decedent in contemplation of death; hence, the question of the burden of proof is merely academic in this proceeding.

*Valuation of apartment.*—The apartment in question was included in decedent's estate on the return at a value of $30,000. The Commissioner increased this value to $45,000. The burden of proof is on the petitioner to overcome the prima facie correctness of respondent's determination of value. The evidence presented by petitioner has not, in our opinion, sustained this burden.

Petitioner's only evidence on the value of the Baldwin Apartment was the testimony of one witness who had had considerable experience in the real estate field in Detroit, but he was not a licensed real estate

operator or a professional appraiser. His activities in the real estate field had been primarily those of a builder, owner, and operator.

This witness' testimony with respect to the Baldwin Apartment was in vague and general terms. He stated that he had first inspected the apartment some four or five years prior to the time of the hearing and had considered its location, construction, and general character of the neighborhood in making his estimate of $30,000. Beyond these general considerations we are not informed as to the basis or method of calculation relied on by Powell in arriving at this figure. We are not told in any detail the type of construction involved or the date when the apartment was built. No information is offered concerning operating and maintenance costs. We therefore are unable to determine the net income from the property. We are given no idea of the apartment's value for insurance purposes. We are given no cost basis, nor is the type or condition of the interior furnishings described.

This witness testified that sometime in 1940 he offered a 38-unit apartment which he owned for sale at $55,000, with no success. He further testified that he sold in 1939 a 44-unit apartment owned by him for $55,000. However, we are not furnished with sufficient information concerning the nature and character of these apartments to enable us to rely on these transactions as a basis for comparison. Witness further testified that sometime around 1940 he had offered decedent $28,000 cash for the Baldwin Apartment, thinking decedent was in need of money. This offer was not accepted. Under the circumstances we do not consider this unaccepted offer of any great probative value in determining the apartment's value.

Since no detailed basis or explanation is furnished in support of the witness' estimate of $30,000, and because of the general and vague character of his testimony and the admitted gaps in his knowledge of the apartment's operating costs, we do not feel that we can justifiably rely on the opinion of this one witness. On this state of the record it is our opinion that petitioner has failed to sustain her burden in overcoming the prima facie correctness of respondent's determination. We therefore hold that the apartment's value for estate tax purposes was $45,000.

*Penalty.*—Respondent added a 25 per cent penalty for failure to file the estate tax return within the time prescribed by law. Decedent died April 5, 1940, and the estate tax return should have been filed July 5, 1941, or 15 months from the date of death.[4] The return was filed January 1, 1942, or almost 6 months late. Petitioner argues that the estate should not be subject to such penalty because the delinquency was due to reasonable cause and not willful neglect within the meaning of section 3612 (d) of the Internal Revenue Code. Peti-

---

[4] Treasury Regulations 105, sec. 81.63.

tioner argues that the delinquency resulted because the attorney who was entrusted with filing the return was not aware that there was any time limit.   Petitioner further contends that the attorney's care and caution in assembling the necessary data was time-consuming and was embarrassed by the illness of decedent's secretary.   In our opinion this argument reduces itself to ignorance of the law.   If there were valid reasons for delay an extension could have been requested.   No such request was made.   Ignorance of the plain and unambiguous provisions of the statute and regulations prescribing the time for filing returns can not be considered reasonable cause.   We hold that respondent correctly added the penalty.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

VAN FOSSAN and KERN, *JJ.*, concur only in the result.

ARUNDELL, MURDOCK, and JOHNSON, *JJ.*, dissent.