Estate of R. Jay Flick, Deceased, Robert I. Ingalls, Jr., and Bankers Trust Company, Executors v. Commissioner.
Estate of R. Jay Flick v. Commissioner
Docket No. 6341.
United States Tax Court
1947 Tax Ct. Memo LEXIS 324; 6 T.C.M. (CCH) 72; T.C.M. (RIA) 47016; January 30, 1947
Albert R. Connelly, Esq., James H. Nichols, Esq., and Frank H. Detweiler, Esq., 15 Broad St., New York 5, N. Y., for the petitioners. Clay C. Holmes, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined a deficiency in estate tax of $139,044.62. R. Jay Flick, hereinafter referred to as decedent, died on August 24, 1940. The executors of decedent's estate, as petitioners, assigned the following errors on the part of respondent. 1. Inclusion in the gross estate of decedent of the proceeds of six insurance policies, taken out by decedent on his own life and transferred to a trust created in 1935, either under section 811 (c) and/or 811 (g) of the Internal Revenue Code *325 . 2. Addition to the gross estate by increasing the value of Palm Beach County, Florida, School District No. 5, 4 1/2 percent bonds. 3. Reduction by $4,400 of the reimbursement of decedent's widow for expenses incurred. 4. Reduction from $5,000 to $2,500 in the amount of estimated additional administration expenses. 5. Addition to the gross estate by increasing the value of Porcupine Club, Ltd., notes. Item 4 above, it is stipulated, can be settled on Rule 50 recomputation. Item 5 must be treated as abandoned by petitioners, no proof whatsoever having been offered at the hearing. Some of the facts have been stipulated. Findings of Fact The stipulated facts are hereby found. Decedent was born on June 24, 1871, and died on August 24, 1940, a resident of Palm Beach, Florida. Petitioners, Bankers Trust Company, a New York corporation, and Robert I. Ingalls, Jr., a resident of Alabama, are executors of decedent's will. They filed with the collector of internal revenue at Jacksonville, Florida, on or about November 20, 1941, a Federal estate tax return for the estate of the decedent, elected to have the estate valued as of the optional valuation date, and paid the tax *326 of $251,243.66 shown to be due on the return. Decedent's will, dated December 4, 1939, was admitted to probate by the County Judge's Court of Palm Beach County, Florida, and shortly thereafter by the Surrogate's Court of New York County, New York. It recited that: FIRST: I hereby revoke all former wills and codicils by me at any time heretofore made. The will provided, inter alia, for the creation of a trust out of the residue of the estate, the income of which was distributable. * * * in as nearly as practicable equal monthly instalments, to my said wife, HENRIETTA RIDGELY FLICK, if she shall survive me, during her life and, from and after her death, or, if my said wife shall not survive me, from and after my death, to my said daughter, ELEANOR FLICK INGALLS, if she shall survive me and my said wife, during her life and, upon the death of the survivor of my said wife and my said daughter after my death, or if neither of them shall survive me, then upon my death, I direct my Trustees to divide and set apart the principal of the trust estate into separate funds for my issue then living, in equal shares per stirpes, * * * Insurance Trust Issue. On December 9 1935, decedent *327 created an insurance trust and on that day assigned to the trust by absolute, complete, irrevocable assignments, reserving no interest to himself in the trust instrument, the following six paid-up policies on his life of the face amount of $217,500, and having a value of $174,004.12 at that time: When
Face
Amount
Issue Date
Company
Paid Up
Amount
Collected
Mar. 3, 1897
Northwestern Mutual Life Insurance
1917
$ 20,000
$ 36,300
Co. No. 365,032
Aug. 29, 1911
Same Company No. 891,599
1931
$ 15,000
$ 15,251
Nov. 1, 1935
Mutual Benefit Life Insurance Co.
Single Premium
$80,000
$ 80,435.99
No. 1,702,718
Nov. 1, 1935
Same Company No. 1,702,719
Single Premium
$ 20,000
$ 20,109
Nov. 22, 1935
Conn. Mutual Life Insurance Co. No.
Single Premium
$ 32,500
$ 32,638.74
887,364
Nov. 26, 1935
Prudential Ins. Co. No. 9,086,294
Single Premium
$50,000
$ 50,429.74
Totals
$217,500.00
$235,164.47
The trustees of the trust were the Trust Company and Ingalls, executors of decedent's will. The trust provided, inter alia, with reference to the payment of income and principal that the trustees * * * shall pay the net income, *328 in as nearly as practicable equal monthly instalments, to the Insured's wife, HENRIETTA RIDGELY FLICK, during her life, and from and after her death, if the Insured's daughter, ELEANOR FLICK INGALLS, shall then be living, to said ELEANOR FLICK INGALLS during her life, and upon the death of the survivor of said HENRIETTA RIDGELY FLICK and said ELEANOR FLICK INGALLS, (A) if the Insured shall already have died, the Trustees shall divide and set apart the then principal of the trust estate into separate funds for the issue then living of the Insured, in equal shares per stirpes, * * * Anything herein contained to the contrary notwithstanding, any dividend or dividends which may be received by the Trustees on any of the policies during the life of the Insured may, in the absolute discretion of the Trustees, be employed by the Trustees in the purchase of additional paid-up insurance on the life of the Insured (under a policy or policies naming the Trustees as beneficiaries) * * * Decedent filed a gift tax return for 1935 setting forth the gift of the policies to the trust and paid the gift tax payable with respect thereto in the amount of $5,910.37. Under the terms of the trust *329 agreement the trustees had the right at any time to obtain the cash surrender or loan values of the policies and to reinvest the proceeds in any investments which they might deem suitable, but they were under no obligation in respect of the policies during decedent's lifetime other than for the safekeeping of such policies as shall be delivered to them. Additional authority conferred upon the trustees included the following: If in the opinion of the Trustees it appears for the best interests of the beneficiaries of the Will of the Insured or of those persons who may take his property pursuant to the laws relating to intestacy, or any of them, then the Trustees may purchase from the Executors of the Will or Administrators of the effects of the Insured and retain as an investment, without liability for loss or depreciation and without regard to whether or not such property is within the class of investments permitted for trust funds by the laws of the State of New York or of any other State or jurisdiction, any securities or other property, real or personal, belonging to the estate of the Insured; and without liability for loss may make secured or unsecured loans to said Executors *330 or Administrators upon such terms as seem to them desirable. The decision of the Trustees concerning the propriety of making such purchases or loans shall be binding and conclusive upon all persons and corporations interested in this trust, or in the estate of the Insured. At the time of the creation of the trust, decedent was 64 years of age and in good health; his wife had been for some years theretofore, and still was at that time, an invalid. Decedent was survived by his wife, born on August 16, 1872; his daughter, born on December 8, 1910; and two grandchildren, one born on September 5, 1935, and the other on September 28, 1938, all of whom were alive at the optional valuation date. From the time of the creation of the trust until decedent's death the trustees collected $7,993.83 as dividends on the policies, which amount, less expenses, was paid over to decedent's widow, pursuant to the terms of the trust agreement. Decedent left a gross estate of $1,490,474.09, as of the optional valuation date, composed of: Real estate
$ 137,801.16
Preferred stocks
43,746.35
Common and capital stocks
1,131,204.28
Bonds
103,430.07
Mortgages, notes and cash
10,315.13
Insurance
381.30
Other miscellaneous property
63,595.80
Total gross estate
$1,490,474.09
*331 There were debit balances of over $140,000 against his securities. The condition of his estate on December 9, 1935, had been substantially the same. Decedent's income tax returns for the years 1931 to 1935, inclusive, set forth his net income and total tax, as follows: 1931
1932
1933
1934
1935
Net Income
$107,597.40
$70,546.44
$63,152.43
$65,080.80
$76,305.66
Total Tax
1,552,75 *
0.00 **
6,060.34
11,689.09
16,100.39
Decedent did not discuss inheritance taxes with the attorney who prepared the trust agreement nor with his family; he displayed concern over his rising income taxes. To his attorney he expressed as his primary interest for the creation of the trust his desire to provide for his invalid wife. Decedent's wife and his stepdaughter divided between them the expenses of maintaining a New York apartment from about 1927 to about 1930, from which date until 1935, decedent also contributed, the expenses being divided among the three. In 1935, the stepdaughter discontinued her contributions toward the expense of the apartment. Respondent in his determination *332 added to the gross estate of decedent, reported on the tax return, the sum of $235,164.47, representing the net proceeds of the six life insurance policies received by the trustees on the death of the decedent, stating in the notice of deficiency: * * * the value of the proceeds of six certain policies of insurance taken out by decedent on his own life and by him transferred to the trust created December 9, 1935 formed a part of his gross estate within the meaning of section 811(g) of the Internal Revenue Code. In the alternative, the value of the proceeds of said policies of insurance formed a part of decedent's gross estate for the reason that they were transferred in trust by decedent on or about December 9, 1935 in contemplation of, or intended to take effect in possession or enjoyment at or after his death within the meaning of section 811(c) of the Internal Revenue Code. The transfer to the trust in 1935 of the six life insurance policies was made in contemplation of death. Palm Beach County Bonds. At the time of his death decedent owned $10,000, principal amount, Palm Beach County School District No. 5, 4 1/2 percent bonds, *333 due July 1, 1961, and 1963, which were set forth in the estate tax return at a quotation of 91 as of August 24, 1941, which respondent has proposed to increase to 97 1/2. Petitioners ordered the bonds sold at the market on February 25, 1942, and they were sold on August 5, 1942, at 89. The bonds are not listed on any exchange and had to be sold over-the-counter by those who specialize in bonds of this type. This issue of bonds was very small, less than 150 having been outstanding. There was no evidence of any other sale of these bonds closer to August 24, 1941. On the optional valuation date the total fair market value of the Palm Beach County School District bonds was $9,100. Reimbursement of Decedent's Widow for Expenses Incurred. There was listed on the estate tax return as a debt of the decedent the sum of $7,569.26 paid by petitioners to decedent's widow as reimbursement for expenses incurred. Decedent's widow had theretofore filed with petitioners a proof of claim composed of the following items: Fare of servants from Palm Beach to
Lenox
$ 88.68
One-half cost of Christmas gifts
119.50
Fare of chauffeur from New York to
Boston
7.80
Compartment to Boston
43.65
Hospital expenses
125.55
Board of chauffeur
18.32
New York hotel bill (including food)
for nine weeks
1,692.14
Nurses in New York
100.00
Nurse in Lenox
90.00
Lenox Club
59.50
Expenses of closing Palm Beach house
112.62
Minister
50.00
Board of chauffeur in New York for
nine weeks
207.00
Half of rent of New York apartment
for one month
187.50
Mourning paper
77.00
Flowers
190.00
Two men servants in house for four
months
900.00
Food for six months (my husband was
accustomed to reimburse me for my
expenses for food for the family)
2,500.00
Mourning clothes for daughters and my-
self
1,000.00
$7,569.26
*334 Respondent disallowed the last three items. Petitioners brought a proceeding before the Surrogate's Court of New York County for settlement of their account. The Court appointed an attorney as special guardian to represent decedent's grandchildren and the special guardian filed his report with the Court, in which he objected, among other things, to payment of $7,569.26 on the ground that the claim was not a proper charge against the estate. The issues raised by the objections of the special guardian were tried before Honorable James A. Foley, Surrogate of the County of New York, on April 5, 1945. At the conclusion of the trial the objection to the payment of the $7,569.26 was withdrawn by the special guardian with permission of the Surrogate. The opinion of the Surrogate with respect to this item was as follows: The sixth objection has been withdrawn with the permission of the surrogate, and independently thereof the payment of the amount of the claim of the widow is held to have been proper. A decree was made by the Surrogate on June 12, 1945, judicially settling and allowing petitioners' account as filed, except for certain adjustments not affecting the payment of the $7,569.26. *335 That decree has now become final. Opinion Inclusion in the gross estate, as transfers in contemplation of death, of the proceeds of insurance policies placed in trust by decedent depends on whether the transfer was dictated primarily by motivations connected with decedent's death, rather than by those applicable during the remainder of his life; or, stated more tersely, whether "the transfers in question were substitutes for testamentary dispositions and were primarily actuated by motives of the sort which lead to testamentary dispositions." Estate of Arthur D. Cronin, 7 T.C. 1403 (Dec. 30, 1946). As in that case, the more usual indications from the facts that a decedent has been dominantly impelled by advancing age or insecure health are absent. But the circumstances of these transfers in other respects lead, as they did in the Cronin case, to our ultimate finding of fact that the very nature of decedent's dispositions shows that a desire to make provision upon the event of his death predominated. Not only the subject matter of the transfer - policies of insurance which would acquire their greatest value upon their maturity at the death of the insured - but the *336 circumstances and plan of their acquistion and the creation and design of the trust so heavily emphasize considerations connected with decedent's death that no other conclusion seems reasonably warranted. See Regulations 105, sec. 81.25. Out of a total of $217,000 face amount of insurance, all but $35,000 were taken out within six weeks of the creation of the trust. The trust favored the same beneficiaries and made the same distributive provisions as decedent's will. The trustees were the same as his executors. We do not know that a will was executed at about the time the trust was created, but it seems highly probable that there had been a will prior to the one which was ultimately probated, and that a will making the same provisions was in effect when the trust was set up. At least the burden on petitioners of proving the contrary has not been met. A man of decedent's wealth and business experience could hardly be expected to wait until he became 68 years of age before executing his first will. And the intimate connection in the decedent's mind between the estate which would arise upon his death and the establishment of the trust appears particularly from the portion of the latter *337 instrument calling upon the trustees to consider the "purchase from the Executors of the Will or Administrators of the effects of the Insured * * * [of] any securities or other property, real or personal, belonging to the estate of the Insured" if it should appear to be for the best interests of those participating in the estate. All of these evidences look in the direction of a provision for the integration of the proceeds of the insurance and the property devolving at death, creating persuasive inferences of a corresponding motivation in the mind of the individual whose conduct they reflect, and consistent only with testamentary motivation. On the other hand, an insignificant portion of the benefits of the trust was left for its prospective operation during decedent's lifetime. The dividends on the policies were, to be sure, paid to the primary beneficiary. But these dividends over a five-year period amounted to less than $8,000, or an average annual return of about $1,600 on policies having a face value of over $200,000 and upon which there was collected at death over $235,000. The income was thus less than one percent on an investment which was in the neighborhood of $175,000. *338 The great financial return - the difference between $175,000 and $235,000 - was hence to be secured by holding the policies until they matured. That maturity involved decedent's death. So great was decedent's evident preoccupation with provisions effective upon his death that it was even provided in the trust instrument that that small annual income need not be paid to the primary beneficiary, his wife, "during the life of the insured," but might be used to purchase additional insurance upon his life. And while the trustees were granted permission to exercise all rights of ownership in the policies and could presumably have converted them into cash, they were given no directions to do so in any contingency, and the provision seems rather an incidental precaution than any evidence of a serious and dominant program. The decedent's principal concern for his wife's welfare, attested by petitioner's own witness, was manifestly directed to provision for her protection upon his death, rather than before it. Such other motives as a desire to free his property from the hazards of stock market fluctuations and to avoid the incidence of the income tax could have been accomplished in so many *339 other ways that even were there more convincing evidence of their existence, they would yet weigh negligibly in a determination of decedent's impelling purpose. For these reasons we have incorporated in our findings of fact the ultimate conclusion that the transfers in question were made by decedent in contemplation of his death. Thomas v. Graham ( C.C.A., 5TH Cir.), 158 Fed. (2d) 561 (December 12, 1946). Two other minor issues are contested. The first involves the value of certain bonds on the optional valuation date. Our finding of fact as to value disposes of this question. We have found as the most reasonable figure for this item the amount originally fixed by the executors in the estate tax return, which is less than respondent's determination but greater than the amount of the sale approximately one year later. The judgment of the executors formulated at the time appears to us more convincing evidence than their second thought on the subject, although the subsequent sale at a smaller figure sufficiently overcomes any presumption of correctness attaching to the deficiency determination. The remaining question involves the deductibility of certain items as allowable *340 claims against decedent's estate. They were adjudicated in the New York Surrogate's Court after the appointment and report of a special guardian. Respondent's regulations provide: The decision of a local court as to the amount of a claim * * * will ordinarily be accepted if the court passes upon the facts upon which deductibility depends * * *. It must appear that the court actually passed upon the merits of the case. This will be presumed in all cases of an active and genuine contest * * *. [Regulations 105, section 81.30] Respondent's sole opposition to the allowance of the deductions rests upon assertion that sufficient facts have not been shown to demonstrate that the expenditures in question were enforceable claims against decedent's estate. While it is true that the details as to time and circumstance are largely absent, the record shows that the items and amounts deducted were the subject of contested proceedings in the Surrogate's Court. It seems apparent from respondent's regulations that they should be allowed unless some element connected with the claims themselves or with the probate court proceedings is so extraordinary or incompatible with the apparent facts that *341 the general rule established by the regulation should not be permitted to govern. Under the circumstances it does not seem unreasonable to place the burden of going forward with the production of any such evidence upon respondent - a burden which, of course, in the present case he does not even purport to have borne. The deduction should be allowed in full. Decision will be entered under Rule 50. Footnotes
*. Tax reduced by capital losses. ↩
**. Tax eliminated by capital losses.↩