ESTATE OF PAUL GARRETT, DECEASED, EVELYN E. GARRETT, HOWARD C.
PAULSEN, AND J. CAMPBELL MOORE, EXECUTORS, PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4407.   Promulgated February 28, 1947.

*Edmund S. Kochersperger, Esq.*, for the petitioner.
*William Evans, Esq.*, for the respondent.

494

502

## OPINION.

OPPER, *Judge*: The issue here raises the usual problem in contemplation of death cases; that of determining by a deductive process from all the facts the nature of decedent's dominant motive for making the transfers. The issue does not arise here with equal force as to all of the interests transferred. Decedent made three separate transfers. Respondent now appears to concede that the property embraced in the so-called Trust No. 2 may be eliminated from the estate. That concession is presumably founded on the purpose to be gathered from the instrument of transfer itself: that decedent proposed to satisfy the immediate needs of his children, making them the outright beneficiaries of the income and leaving no substantial phase of the trust operation to await the event of his death. See *City Bank Farmers Trust Co.* v. *McGowan*, 323 U. S. 594.

A comparable consideration applies to a part of the remaining 1923 transfer, known as Trust No. 1. Decedent's wife was the life beneficiary of a part of the income, and the record shows that a generous portion of the total income received by the trust was devoted, as it was presumably intended to be, to the periodic payments to her as life beneficiary. As to this, decedent's concern for the immediate welfare of the beneficiary must be recognized.

To our mind, however, this portion of Trust Fund No. 1 must be rigorously severed from the remaining portions of the same fund, and from the property transferred in 1929. Trust Fund No. 1, as to the balance, was in essence a life insurance trust. Its evident purpose was primarily to safeguard and keep in effect the considerable value of decedent's life insurance policies. Not only the policies themselves, but other property in the trust, consisting of income-bearing securities, partakes of that character, because by his arrangement with respect to it decedent has made it clear that his first preoccupation was with the use of that part of the income from the securities for the payment of current premiums on life insurance.

That his dominant motive was thus to preserve intact an estate which would come to fruition upon his death, is evident from the care with which these purposes were safeguarded by decedent's arrangements. By paragraph twelfth of the trust instrument the corporate trustee is absolved from "any obligation of any nature" as to the insurance policies, "other than the safekeeping thereof * * * and the payment, so far as may be necessary to keep said policies in full force, of the premiums thereon * * * out of the net income received by the Trustees upon said Trust Fund No. 1, *during the life of the Grantor (which payment shall be regarded as an application of the income so*

*used to the use of the respective beneficiaries of said Trust Fund*) * * *." (Emphasis added.)

The motivation which led decedent to take the action in question seems adequately reflected by the emphasis placed upon the use of that part of the income, not for the current needs during his life of the respective beneficiaries, but for the preservation of the insurance estate. If there could be gathered a purpose to make provision for the ultimate beneficiaries during decedent's life—a necessity diminished by the arrangements, in that respect made otherwise but contemporaneously—it would have to be viewed as secondary and not as that primary, compelling, or dominant reason about which the present problem revolves. See *United States* v. *Wells*, 283 U. S. 102.

Several cases have arisen recently which have furnished the occasion for a consideration of a similar question. In *Vanderlip* v. *Commissioner*, 155 Fed. (2d) 152, affirming 3 T. C. 358 (certiorari denied, 329 U. S. 728), Judge Learned Hand said for the Second Circuit Court of Appeals:

* * * A gift differs from a bequest,—apart from the inevitable loss of control over the property—only in so far as it secures enjoyment to the donee during the donor's life; and the donor's motives are relevant to exclude property only so far as they touch upon his enjoyment in that period. * * *

See also *First Trust & Deposit Co.* v. *Shaughnessy* (C. C. A., 2d Cir.), 134 Fed. (2d) 940; certiorari denied, 320 U. S. 744.

And to quote from *Thomas* v. *Graham* (C. C. A., 5th Cir.), 158 Fed. (2d) 561:

The trust merely kept in force decedent's life insurance policies during his life and economic benefits were intentionally and effectually withheld until after his death. Although the trial judge found that the transfers were not made in contemplation of death, we are of opinion that a construction of the trust instrument demands a contrary finding.

See also *United States* v. *Tonkin & Peoples-Pittsburgh Trust Co.* (C. C. A., 3d Cir.), 150 Fed. (2d) 531; certiorari denied, 326 U. S. 771; *Davidson* v. *Commissioner* (C. C. A., 10th Cir.), 158 Fed. (2d) 239.

It is true, of course, that not every transfer made to the natural objects of a decedent's bounty, even though its effect is to avoid estate tax, is a transfer in contemplation of death. *Colorado National Bank of Denver* v. *Commissioner*, 305 U. S. 23; *Allen* v. *Trust Co. of Georgia*, 326 U. S. 630. It must be equally true, on the other hand, that not every transfer, the effect of which is to remove property from the speculative risk of retention in a decedent's hands, is automatically eliminated as a transfer in contemplation of death. That is the result of all transfers in which decedent effectively withdraws from control. Such a motive, as the primary cause of a trans-

fer, may well be one resulting from decedent's preoccupation with circumstances connected with his life, and thereby effectively remove the transaction from the scope of the contemplation of death provisions. See *Thomas C. Boswell et al., Executors*, 37 B. T. A. 970. Under such circumstances, if decedent retains the income, the transfer might be included in his estate if made after March 3, 1931—not, however, as a contemplation of death arrangement, but because the expressed plan of the statute now includes it. Cf. *Hassett* v. *Welch*, 303 U. S. 303. But the motive to preserve the property as a current source of income must be discernible as decedent's compelling concern. It is not inconsistent with a coordinate frame of mind comparable to testamentary concepts. *Estate of Benjamin Franklin McGrew*, 46 B. T. A. 623; affd. (C. C. A., 6th Cir.), 135 Fed. (2d) 158; see *Diamond* v. *Commissioner* (C. C. A., 2d Cir.), 159 Fed. (2d) 672. Whether the grantor takes that action with a dominant view to its effect upon the estate which will arise at his death, with testamentary motives, on the one hand, or, on the other, to immediate or intervening considerations, is the true test.

Neither would the fact that this transfer involved so heavily the aspect of decedent's life insurance of itself create an inference of contemplation of death. See Regulations 105, sec. 81.25. If insurance is transferred outright so that the donee is at liberty to use it or hold it to maturity as he may decide, the transaction may be similar to any gift of property. But where the intrinsic nature of the insurance itself is so markedly stressed, where the surrounding circumstances and integral features of the transfer so obviously indicate decedent's purpose to have the policies retained until they and his life terminate together, and in the meantime to have the trust income devoted to their preservation, it can not but demonstrate what the compelling purpose is, nor suggest that this purpose is other than testamentary. *Estate of Arthur D. Cronin*, 7 T. C. 1403. By withholding from the donees the benefits of both property and insurance during the remainder of his lifetime, *Vanderlip* v. *Commissioner, supra*, by making evident his purpose to keep in force the life insurance policies until they should mature at his death, *Thomas* v. *Graham, supra*, the evidence of decedent's dominant objective is provided, which compels the ultimate finding that to the extent indicated the transfer was made in contemplation of death.

In *Estate of Arthur D. Cronin, supra*, the transfer involved solely insurance policies on decedent's life. As to that property, we held its proceeds entirely includible in the gross estate. A similar conclusion was reached in *First Trust & Deposit Co.* v. *Shaughnessy, supra*. In *Thomas* v. *Graham, supra*, the transfer was not only of life insurance, but also of income-producing assets, the avails of which,

however, were evidently not designed to be in excess of an amount necessary to defray the current premiums on the insurance policies. In that case, both the insurance and the property used to sustain it were included in the gross estate.

These considerations do not, of course, apply to that part of Trust Fund No. 1 devoted to producing current income for the life beneficiary, which, as we have already noted, was set apart for a purpose to be anticipated during decedent's life. But the only difference here is that decedent placed in the same trust both property from which the income would be necessary to support the premium payments and also additional property which, as we have said, would not be so required, and whose use for purposes of an *inter vivos* nature was evidently intended. It is thus apparent that as to the life insurance policies and as to that part of the securities the income of which was necessary to keep them in force, decedent's motive was dominantly testamentary, and that accordingly as to that interest in the property, there was a transfer in contemplation of death. On the other hand, as to the securities whose function was to supply the surplus income available for decedent's wife, the life beneficiary, the transfer was for an immediate purpose and no similarity in nature to that of a bequest appears. The question is, How is a transfer of that nature to be treated?

We regard the answer as supplied by the statute and the long standing regulations promulgated under it. The language of the provision in question is that there is to be included in the gross estate property "*to the extent of any interest therein* of which the decedent has at any time made a transfer by trust or otherwise in contemplation of * * * his death." (Emphasis added.) The regulations in effect at the date of death amplify the language as follows:

* * * If a portion only of the property was so transferred as to come within the terms of the statute, only a corresponding proportion of the value of the property should be included in ascertaining the value of the gross estate. [Regulations 105, sec. 81.15.]

That the insurance policies and the securities devoted to their preservation do not constitute the entire fund need thus not obscure the fact that the decedent himself by his divergent treatment has created the segregation. We see no reason for excluding the property completely where decedent's own dispositions indicate a different motive with respect to the several parts. His aim and intent being the controlling factors, we think effect must be given them by a corresponding separation.

Since we have concluded that the securities are to be treated according to the purpose to which decedent designated that their income should be devoted, and since there is no reason to assume that the

actual application of the income was not in accord with the decedent's anticipatory intention, the portion of the securities valued as of the date of death should be included in the estate which the income paid for the life insurance premiums bears to the total distributable income. The record shows that, out of approximately $500,000 of distributable income, about $350,000 was paid to the life beneficiary and about $150,-000 was devoted to the maintenance of the life insurance. Making the certainly not unreasonable assumption that this actual application of the income was the effectuation of the decedent's original intention, we conclude that in addition to the proceeds of the policies themselves, three-tenths of the value of the securities in the trust is includible in the gross estate as property transferred in contemplation of decedent's death, and the remaining seven-tenths is not so includible.

The 1929 transfer is different from that of 1923, and yet necessarily related to it. That a decedent should form a consistent purpose with respect to the disposition of his property, even though carried out in installments over a period of years, appears to us sufficiently reasonable so that the continuation of that policy by means of the subsequent action both confirms the conclusion as to the earlier trust and furnishes some evidence of the dominant motive leading to the subsequent transfer.

Considerations similar to those under the 1923 arrangement apply to the trust created in 1929. The aspect of life insurance is absent. But under that transfer petitioner, by means of the intervening subservient corporation and the control which he exercised through the corporation and trust, together, effectively withheld from the donees during decedent's life all benefits from that part of the fund which he had contributed.

Here the connection between the decedent's formal testamentary dispositions and the operation of the trust is revealing. The will which was probated was executed in 1935, six years after the creation of the trust, but only 2½ years after transfer to it in 1933 of the assets composing it, and about the same length of time after decedent's last transfer of securities to the intervening corporation. The record does not disclose whether there was an earlier will or what its provisions might have been. But we do know that in the will which became effective, the same persons were appointed as executors and trustees as were the trustees under the 1929 trust. The beneficiaries were the same. And after the death of decedent's wife, the life income recipient under both will and trust, the property itself was to be transferred to the same trustees explicitly for administration as a part of the 1929 trust.

The entire record thus confirms decedent's testamentary motive as to the two trusts, and manifests the essential unity of decedent's will,

his life insurance, and the *inter vivos* transfers of his own property. We do not, however, accept respondent's position that property transferred at the same time to the 1929 trust by others is also includible. We have accordingly concluded, as incorporated in our findings of fact, that only to the extent indicated these transfers were made by decedent in contemplation of his death.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

BLACK and JOHNSON, *JJ.*, dissenting: It is plain that Trust No. 1, executed by decedent November 30, 1923, was not executed "in contemplation of death" in the sense that the decedent when he executed the trust had a present apprehension from some existing bodily or mental condition that death was near at hand. It is equally clear that no such fear or apprehension was the dominant cause for the transfers. See *United States* v. *Wells*, 283 U. S. 102. If any such "contemplation of death" existed as a dominant motive then, of course, the entire amount of the corpus transferred to the trust would be includible in the decedent's estate under section 811 (c) of the Internal Revenue Code. However, the majority opinion holds that seven-tenths of the value of the securities are not to be included because the dominant motive impelling the transfer of these securities was associated with life and not with death. That, of course, could not be if the transfer by decedent was "in contemplation of death" in the sense we have above described. But it is, of course, true that transfers to be included under section 811 (c) as "in contemplation of death" do not have to be made in apprehension of death near at hand. It is sufficient if the dominating motive for the transfer is testamentary in character. *United States* v. *Wells, supra.*

The majority opinion holds that, although the transfer of seven-tenths of the securities was not "made in contemplation of death" in either of the senses we have just mentioned, nevertheless the transfers of the insurance policies and three-tenths of the securities were testamentary in character and, therefore, were made "in contemplation of death" within the meaning of the applicable statute. We can not agree to this conclusion. We do not think it is supported by the facts embodied in the findings of fact. The majority opinion almost says, though not quite, that the transfer to a trust of an insurance policy on the transferor's life is necessarily testamentary in character and therefore made in contemplation of death. The majority opinion concedes that a transfer of an insurance policy may resemble a gift, but deduces the "decedent's purpose to have the policies retained until they

and his life terminate together"; stresses that trust income was to be used in part for premiums; and then concludes that the purpose of the transfer was testamentary. It is evident that decedent contemplated a continuation of the trust and a distribution of trust income long after his death at all events, and .hence the only effect of his death would be to increase the corpus from which income could be derived and to increase net income by elimination of the premium payments. It seems to us that the policies were an asset of the trust, like other assets; they had been taken out one by one since 1890, and, so far as we can see, should be treated in the same way as all the rest of the property which was transferred to the trust.

Apart from the normal incidents of insurance, the majority opinion finds nothing to indicate contemplation of death as a motive for creating the trust. Inferentially, we think the majority would have found no such motive if mortgaged real estate had been transferred in trust and if trust provisions had required that trust income be used to pay off the mortgage debt. Such use would have built up the corpus of the estate; so here, the use of income for premiums built up corpus. In the absence of a general contemplation of death when the trust was formed, we fail to see any good reason why the transfer of insurance policies, taken out years before, is to be differently considered merely because their payment is conditioned on decedent's death. And this view gains strength from the fact that section 811 (g) of the Internal Revenue Code specifically provides for the inclusion in gross estate of the proceeds of insurance policies receivable by others than the insured's estate if the premiums were paid by the insured or if the insured possessed at death any incidents of ownership. Implicitly such proceeds are not to be included in the absence of these conditions, and it is obvious that these conditions were missing here. Decedent had relinquished all powers over the policies and the trust, not he, paid the premiums.

The majority opinion, in reaching the conclusion that the value of the insurance policies and three-tenths of the value of the securities should be included in decedent's estate because the transfer of them to Trust No. 1 was made in contemplation of death, relies heavily upon *Vanderlip* v. *Commissioner*, 155 Fed. (2d) 152; *First Trust & Deposit Co.* v. *Shaughnessy*, 134 Fed. (2d) 940; and *Thomas* v. *Graham*, 158 Fed. (2d) 561. In our judgment these cases are distinguishable on their facts. In the *Vanderlip* case the facts briefly were these: Before 1918 the testator had taken out policies of life insurance aggregating nearly a million dollars, upon which he had borrowed before June 1, 1932, all that the insurers would lend. On that day he delivered and assigned all the policies to four trustees

upon trust to hold them until they became payable and then to collect them and hold the proceeds as the principal of a trust fund. The deed gave power to the trustees to use all dividends declared to pay premiums and interest on the loans and to borrow upon the policies for the same purpose. Furthermore and most important of all, it was stipulated that the gift of policies "was motivated solely by the decedent's desire to avoid estate taxes and was not otherwise made in contemplation of death within the meaning of the Revenue Acts of 1926 and 1932 as amended or of the regulations thereunder."

We have no stipulation of facts in the instant case or finding of fact that the decedent made the transfers solely to avoid estate taxes. If we did have such a stipulation of fact or finding, then of course we would hold that the value of the entire property transferred to Trust No. 1 and not just the insurance policies and three-tenths of the securities should be included in decedent's estate. See *Estate of Frank A. Vanderlip*, 3 T. C. 358; affd., *Vanderlip* v. *Commissioner*, *supra*.

*First Trust & Deposit Co.* v. *Shaughnessy*, *supra*, is distinguishable on the same ground as the *Vanderlip* case. In fact, in the *Vanderlip* case we relied on the *First Trust & Deposit Co.* case as one of the controlling authorities.

In *Thomas* v. *Graham*, *supra*, the Fifth Circuit reversed the United States District Court for the Northern District of Texas and held that decedent's community interest in certain securities and policies of insurance transferred to a trust by decedent and his wife on October 12, 1936, were includible as a part of decedent's estate under section 811 (c) on two grounds, (1) because of a possibility of reverter by operation of law and (2) because the transfer was made in contemplation of death. The holding of the court on the second ground was briefly stated and was based on the finding that the deed of trust was nothing more than a substitute for a testamentary disposition of the property within the meaning of the statute and section 81.16 of Treasury Regulations 105. If the language of the court in this *Thomas* v. *Graham* case, *supra*, is to be construed as holding that the mere fact that insurance policies are transferred to a trust to be collected on decedent's death and become a part of the corpus of the trust means that such a transfer is made in contemplation of death and the proceeds of the policies must be included as a part of decedent's estate, then, with all due respect to the court, we think the court is wrong and its decision is contrary to the weight of authority, particularly the reasoning of the Supreme Court in *United States* v. *Wells*, *supra*.

For the foregoing reasons, we respectfully dissent from the majority opinion.