ESTATE OF VERNE C. HUNT, DECEASED, MONA S. HUNT, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12554. Promulgated June 15, 1950.

*Arthur Groman, Esq.*, for the petitioner.
*H. Arlo Melville, Esq.*, for the respondent.

1184

## OPINION.

HARRON, *Judge*: The first question is whether *inter vivos* transfers of four contracts of life insurance by the decedent to his wife were

transfers of property made in contemplation of death within the meaning of section 811 (c) of the Internal Revenue Code. Respondent contends that the entire proceeds of each of the four contracts of life insurance are includible in the decedent's estate under section 811 (c) as gifts made in contemplation of death. We do not believe, however, that respondent is correct in this contention.

The contemplation of death provision of section 811 (c) of the Internal Revenue Code is designed to "reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax." In order for a transfer to have been in contemplation of death, the dominant motive or impelling cause for it must have been testamentary in nature. *United States* v. *Wells*, 283 U. S. 102; *City Bank Farmers Trust Co.* v. *McGowan*, 323 U. S. 594; *Allen* v. *Trust Co. of Georgia*, 326 U. S. 630. Whether or not an *inter vivos* transfer of property was made in contemplation of death is primarily a fact question.

Under this question, there are four assignments of life insurance to be considered. The evidence shows that in each instance the gift of an insurance contract by the decedent to his wife was dictated by two motives—one, a desire associated with life, was to put the property beyond the reach of a possible judgment against him for malpractice; the other, associated with death, was his wish to minimize the taxes against his estate. In such a situation, *United States* v. *Wells, supra*, laid down the rule that the inclusion of the property within the donor's testamentary estate depends upon which of the two motives predominates. We are persuaded by the facts and circumstances of this case that the dominant motive which impelled decedent to make an *inter vivos* transfer of certain insurance policies to his wife was not testamentary in nature, that decedent was motivated primarily by the desire to put the properties beyond the reach of a possible judgment creditor and thus protect his family.

At the time each one of the transfers was made, decedent was 47 years old and in good health. He was an eminent physician whose medical practice consisted almost entirely of referred surgery of a most difficult and critical nature. While decedent was employed at the Mayo Clinic, all liability for operations was assumed by the clinic. When he set up practice for himself, he took out malpractice insurance and one-year policies were in effect in 1932, 1933, and 1934. At the end of 1934, Drake, his insurance agent, stopped writing such insurance, and decedent became concerned about protection for his family and the problems of obtaining adequate security from malpractice insurance, if he could continue to get such insurance. He was fearful that he might some day be sued for malpractice and desired to put certain insurance policies on his life beyond the reach of possible creditors. This is a motive associated with the things of life rather than death. See *Cronin's Estate* v. *Commissioner*, 164 Fed. (2d) 561,

reversing 7 T. C. 1403; *Estate of Wilbur B. Ruthrauff*, 9 T. C. 418.[1] His insurance agent advised that decedent's objective could be accomplished by making an assignment to his wife. The insurance companies were informed of decedent's desire to transfer ownership of the policies to his wife. They then volunteered the information that by eliminating a possibility of reverter, the proceeds from the policies at decedent's death would not be subject to the Federal estate tax.

As would any prudent man, decedent considered the tax consequences and decided to eliminate the possibility of reverter from the proposed assignments. But the desire to avoid estate taxes was incidental to decedent's dominant motive to put the policies beyond the reach of creditors; it was conceived after information had been volunteered by the insurance companies as a normal service to their policy holders and after decedent had already decided to make the transfers in accordance with his primary motive, which was associated with life.

Upon all of the evidence, it is held that none of the transfers of the four life insurance contracts by the decedent to his wife was made in contemplation of death within the meaning of section 811 (c).

The second question is whether decedent possessed at his death any incidents of ownership in any of the four contracts of life insurance within the meaning of section 811 (g).

Petitioner concedes that some, but not all, of the proceeds from the four life insurance policies involved are includible in decedent's gross estate. Under Regulations 105, section 81.27,[2] the proceeds from the policies are includible only in the proportion that the premiums paid after January 10, 1941, bear to the total premiums paid if the decedent retained no incidents of ownership in the policies after the transfers.

---

[1] The Tax Court held that insurance was includible in the gross estate of the decedent because he had retained incidents of ownership in insurance policies, and accordingly, the respondent's determination of a deficiency in estate tax of approximately $44,000 was sustained. Appeal was taken by petitioner to the Court of Appeals for the Third Circuit. Thereafter, the parties filed a stipulation that the cause should be remanded to the Tax Court with directions to the Tax Court to vacate its decision that there was a deficiency in estate tax of $44,026.45, and to enter a new decision in the petitioner's favor, that there was an overpayment of estate tax of $35,169.71.

[2] SEC. 81.27. *Insurance receivable by other beneficiaries—*

*       *       *       *       *       *       *

(b) *In case of decedent dying after October 21, 1942, and on or before December 31, 1947.* The regulations prescribed under this paragraph (except as otherwise indicated in this section) are applicable only in the case of decedents who died after October 21, 1942, and on or before December 31, 1947. In such cases, the regulations prescribed under paragraph (a) with respect to estates of decedents dying after December 31, 1947, are also applicable (except to the extent inconsistent with this paragraph). For the purposes of this paragraph, premiums or other consideration paid with property held as community property by the insured and spouse under the law of any State, Territory, or possession of the United States, or any foreign country, shall be considered to have been paid by the insured, except such part thereof as may be shown to have been received as compensation for personal services actually rendered by the decedent's spouse or derived originally from such compensation or from separate property of such spouse. With respect to the meaning of property derived originally from such compensation or from separate property of the decedent's spouse, see section 81.23. Section 811 (g) (4) provides that the term "incidents of ownership" includes incidents of ownership possessed by the decedent as manager of the com-

See, also, section 811 (g) (2), as amended by section 404 (a) of the Revenue Act of 1942. Respondent, however, contends that the entire proceeds of the insurance policies in question are includible in decedent's estate under section 811 (g) because decedent did retain some incidents of ownership in the policies.

But respondent can not point to possession by decedent of any incidents of ownership. The assignments of the four policies were absolute and irrevocable. After each assignment, the contract assigned was the sole and separate property of decedent's wife; no policy was part of the property of the community. Complete dominion and control over the four policies were in Mona S. Hunt. Decedent retained no rights under and exercised no powers over any of the four life insurance contracts and received no economic benefits from any of them after their transfer.

It is held that only that proportion of the proceeds of the policies which the premiums paid after January 10, 1941, bear to the total premiums paid is includible in the gross estate of decedent.

*Decision will be entered under Rule 50.*

munity where the insurance policy is property held as community property by the decedent and spouse.

The pertinent portions of paragraph (a) are as follows:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

In such cases, the amount of the aggregate proceeds of all insurance on the life of the decedent not receivable by or for the benefit of his estate must also be included in his gross estate, as follows:

(1) Such insurance (not includible under (2) of this paragraph) purchased with premiums, or other consideration, paid directly or indirectly by the decedent, in the proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance, and

(2) Such insurance with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any person.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

For the purposes of (1) of this paragraph, in determining the proportion of the premiums or other consideration paid directly or indirectly by the decedent (but not the total premiums paid) the amount so paid by the decedent on or before January 10, 1941, shall be excluded if at no time after such date the decedent possessed an incident of ownership in the policy. For the purpose of the preceding sentence a reversionary interest is an incident of ownership.