ALLEN, COLLECTOR OF INTERNAL REVENUE, *v.* TRUST COMPANY OF GEORGIA ET AL., EXECUTORS.

No. 289. Argued January 3, 4, 1946.—Decided January 28, 1946.

*Mr. J. Louis Monarch,* with whom *Solicitor General McGrath, Assistant Attorney General Samuel O. Clark, Jr., Messrs. Sewall Key* and *Carlton Fox* were on the brief, for petitioner.

*Mr. John A. Sibley,* with whom *Mr. Furman Smith* was on the brief, for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The decedent, Jack J. Spalding, died December 8, 1938, at the age of 82. In 1925 he established two spendthrift

trusts—one for his daughter Suzanne and one for his son Jack—and transferred to each trust securities of the value of $50,000. In 1934 he added securities to each trust. He paid gift taxes on these transfers. When he died, the Commissioner included the corpus of each trust in his estate and collected the estate tax on it. The executors brought this suit for a refund. The District Court found that the trusts were established under the following circumstances.

Suzanne and her husband, before 1925, had engaged in a business venture which had ended in disaster. Both had lost all their property and were heavily indebted. Suzanne's husband was without means to support her and their five children. Jack likewise had engaged in an unsuccessful business venture. He was not earning enough to support his family. The gifts were made by the decedent to relieve the needs and to make secure the maintenance of his children and the education and support of his grandchildren. The gifts were placed in trust because Suzanne and Jack had lost prior gifts in unsuccessful projects. The decedent desired to protect them against their own business misadventures and not to retain any benefit, directly or indirectly, to himself. He made the gifts to meet their necessities and desired to set aside the trust property, freed from all claims, tax or otherwise. The decedent, however, retained under the trusts a power to amend with the consent of the trustee and beneficiary.[1] At the time the trusts were established in 1925 and enlarged in 1934 he believed that the gifts were complete and absolute and intended them to be such. He was a lawyer and believed that under the federal law the reservation of such a power to amend would not require the inclusion in his gross estate at his death of the value of the corpus of each

[1] "During my life, by the unanimous consent of the said trustee, my said daughter [son] and of myself, the terms of this agreement may be amended, changed, enlarged or limited, but in no event shall the conveyance of said stock to the party of the second part be revoked."

trust. But in 1935 *Helvering* v. *City Bank Farmers Trust Co.*, 296 U. S. 85, was decided, holding that the reservation of a power to amend brought the corpus of the trust into the settlor's estate, even though the power could not be exercised by the settlor alone. Upon being advised in 1937 that the gifts remained a part of his estate for estate tax purposes, decedent executed an instrument renouncing the power to amend the trusts. This was done so that the trusts would not be a part of his estate for estate tax purposes. At that time, as well as in 1925 and 1934, the decedent was in average good health for a man of his age. He released the power to amend so as to put the trusts in the condition he had thought they were in when he made them. The release was designed to carry out his original purpose in setting aside the property freed from all claims, tax or otherwise. In 1925, 1934, and 1937, he did not entertain thoughts of death except the general expectation of death that all entertain.

The District Court concluded that neither the establishment or the enlargement of the trusts, nor the release of the power to amend was made in contemplation of death. Accordingly, it rendered judgment for respondents. 55 F. Supp. 269. The Circuit Court of Appeals sustained the findings of the District Court and affirmed the judgment. 149 F. 2d 120. The case is here on a petition for a writ of certiorari which we granted because of an apparent conflict between that decision and cases from other circuits.[2]

It is clear that the corpus of each trust was properly included in decedent's gross estate if he released the power

---

[2] Cf. *Farmers' Loan & Trust Co.* v. *Bowers*, 68 F. 2d 916; *Farmers' Loan & Trust Co.* v. *Bowers*, 98 F. 2d 794; *First Trust & Deposit Co.* v. *Shaughnessy*, 134 F. 2d 940; *Commonwealth Trust Co.* v. *Driscoll*, 50 F. Supp. 949, aff'd 137 F. 2d 653. And see Pavenstedt, Taxation of Transfers in Contemplation of Death, 54 Yale L. Journ. 70; Harriss, Gift Taxation in the United States (1940) ch. II.

to amend in contemplation of his death.[3] And there is a presumption that he did so because the release was made less than two years before his death.[4]

---

[3] Sec. 302 (d) (1) of the Revenue Act of 1926, 44 Stat. 9, as amended by § 401 of the Revenue Act of 1934, 48 Stat. 680, reads as follows:
"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

.            .            .            .            .

"(d) (1) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth."
Article 16 of Treasury Regulations 80 (1937 ed.) as amended by T. D. 4966, 1940–1 Cum. Bull. 220, provides in part:
"The phrase 'contemplation of death,' as used in the statute, does not mean, on the one hand, that general expectation of death such as all persons entertain, nor, on the other, is its meaning restricted to an apprehension that death is imminent or near. A transfer in contemplation of death is a disposition of property prompted by the thought of death (though it need not be solely so prompted). A transfer is prompted by the thought of death if it is made with the purpose of avoiding the tax, or as a substitute for a testamentary disposition of the property, or for any other motive associated with death. The bodily and mental condition of the decedent and all other attendant facts and circumstances are to be scrutinized to determine whether or not such thought prompted the disposition."

[4] Sec. 302 (d) (3) provides:
"The relinquishment of any such power, not admitted or shown to have been in contemplation of the decedent's death, made within two years prior to his death without such a consideration and affecting the interest or interests (whether arising from one or more transfers or the creation of one or more trusts) of any one beneficiary of a value or aggregate value, at the time of such death, in excess of $5,000, then, to the extent of such excess, such relinquishment or relinquishments shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title."

It was said in *United States* v. *Wells,* 283 U. S. 102, 117, that a gift is made in contemplation of death within the meaning of the estate tax law if "the motive which induces" it is "of the sort which leads to testamentary disposition." Petitioner's argument is that a purpose to avoid the estate tax is such a motive. It is a motive which would cause a decedent to make an *inter vivos* transfer rather than a will. Since the purpose of the contemplation of death provision was to reach substitutes for testamentary dispositions in order to prevent evasions of the tax (*United States* v. *Wells, supra,* pp. 116-117), the statute is satisfied, it is said, where for any reason the decedent becomes concerned about what will happen to his property at his death and as a result takes action to control or in some manner affect its devolution.

That is a correct statement of the governing principle for it presumes the existence of the requisite motive. The transfer is made in contemplation of death if the thought of death is the "impelling cause of the transfer." *City Bank Farmers Trust Co.* v. *McGowan,* 323 U. S. 594, 599. The transfer may be so motivated, even though the decedent had no idea that he was about to die. *United States* v. *Wells, supra,* pp. 117-118. On the other hand, every man making a gift knows that what he gives away today will not be included in his estate when he dies. All such gifts plainly are not made in contemplation of death in the statutory sense. Many gifts, even to those who are the natural and appropriate objects of the donor's bounty, are motivated by "purposes associated with life, rather than with the distribution of property in anticipation of death." *United States* v. *Wells, supra,* p. 118. Those motives cover a wide range. See 1 Paul, Federal Estate & Gift Taxation (1942) §§ 6.09 *et seq.* "There may be the desire to recognize special needs or exigencies or to discharge moral obligations. The gratification of such desires may be a more compelling motive than any thought

of death." *United States* v. *Wells, supra,* p. 119. Whether such a desire was the dominant, controlling or impelling motive is a question of fact in each case. We do not have here the type of problem presented in *McCaughn* v. *Real Estate Land Co.,* 297 U. S. 606, where the appellate court undertook to reverse the trial court on a review of the evidence. Here two courts have resolved that question of fact in favor of respondents. They have found, as we have said, that Mr. Spalding established the trusts to meet the necessities of his children by giving them property, freed of all claims, tax or otherwise; and that in 1937 he released the power to amend to accomplish the purpose which he originally had, but which he later discovered had not been achieved. Those findings are sufficient to overcome the statutory presumption that the gifts, being made within two years of Mr. Spalding's death, were made in contemplation of death. Those findings, being concurrent findings of the two lower courts, will be accepted here without reexamination of the evidence. See *United States* v. *O'Donnell,* 303 U. S. 501, 508, and cases cited.

It is said, however, that those findings rest on a misconception of the law, since admittedly the decedent in 1937 released the power to amend so as to avoid paying an estate tax on the property included under the trusts. But that is to isolate the release from all that preceded and to treat it as a wholly independent transaction. This is not a case where a settlor, having made one plan for the disposition of his property, later makes a different one to avoid death taxes. Mr. Spalding, in making the release, did what he originally intended to do—to make complete and absolute gifts to his children, freed of all claims, including taxes. Retention of the power to amend would have brought the trust property into Mr. Spalding's estate and subjected it to the estate tax lien.[5] His purpose

───────────

[5] See Int. Rev. Code § 827, 53 Stat. 128, 26 U. S. C. § 827. It was held in *Higley* v. *Commissioner,* 69 F. 2d 160, that the personal liability of transferees did not extend to the beneficiaries under a trust.

to take care of his children, come what may, might thus have been thwarted or impaired. He guessed wrong on the law, when he retained the power to amend. When he rectified the error, he was in good faith, endeavoring to complete his original project, not to give his children more than he at first intended in order to save taxes. What he did in 1937 was merely to accomplish by an additional step what he assumed he had already done. The findings make plain that the establishment of the trusts in 1925, their enlargement in 1934, and the release of the power to amend in 1937 were parts of one integrated transaction. That is a finding of fact which we are not at liberty to disturb on this record. On these facts, his desire to avoid death taxes does no more than establish that he did not want his plan to underwrite the necessities of his children and grandchildren jeopardized. His desire to make adequate provision for them remained the dominant motive, or so the triers of fact could properly find.

*Affirmed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.