180 F.2d 829
 REEVES' ESTATE et al.
v.
COMMISSIONER OF INTERNAL REVENUE.
 No. 129.
 Docket 21403.
 United States Court of Appeals Second Circuit.
 Argued March 1, 1950.
 Decided March 17, 1950.
 
 Decedent, Micajah R. Reeves, was in the cotton textile business for many years. In 1922, he and his brother, John, organized a corporation, Reeves Brothers, Inc., which has acted as a commission house and as a converter of cotton textiles. Decedent was president, treasurer and a director of the corporation from its organization until his death on September 7, 1942.
 During the time here involved, Reeves Brothers, Inc., had outstanding 3,665 shares of 7 per cent cumulative preferred stock with a par value of $100 per share and 19,900 (later reduced to 19,753) shares of common with a par value of $25 per share. On August 21, 1935, decedent owned 1,902 shares of the preferred and 15,345 shares of the common. His brother, John, owned 298 shares of the preferred and 2,681 shares of the common, while another brother, Jeremiah, owned 5 shares of the preferred.
 Decedent created 22 trusts on August 21, 1935, and one trust on January 2, 1940. The trustees named in all were the decedent, his brother John, and his nephew, Richard E. Reeves. Four of the original trusts were for his brothers, one was for his sister, and one was for the widow of a deceased brother. The rest were for nephews and nieces. The trust created on January 2, 1940, was for a niece born in 1939.
 Between August 21, 1935, and the time of decedent's death in 1942, he transferred to the trusts a total of 9,655 shares of the common stock of Reeves Brothers, Inc. On December 30, 1946, he transferred 50 shares of Osage Manufacturing Company stock to each of three of the trusts. From that date until the date of decedent's death, Osage was a subsidiary of Reeves Brothers, Inc.
 No dividends were paid on the common stock of Reeves Brothers, Inc., before decedent's death, nor did those trusts which held Osage stock receive any income. In consequence, the beneficiaries of the trusts received no income before decedent died. During the fiscal year ended June 30, 1943, Reeves Brothers, Inc., paid $4 per share on its common, and, for the first six months of the fiscal year 1944, $2 was paid.
 At the time of decedent's death on September 7, 1942, the stock he had transferred to the trusts was worth $1,354,046. The Commissioner of Internal Revenue determined that decedent had made the transfers "in contemplation of death" within the meaning of § 811(c) of the Internal Revenue Code, 26 U.S.C.A. § 811(c), and included the value of the trusts in decedent's gross estate.
 Petitioners sought review of the determination in the Tax Court. At the hearing, petitioners called witnesses, who testified to the close relationship between decedent and the other members of his family and who asserted without contradiction that decedent had frequently aided his relatives, had paid their expenses, had helped some to start in business and had contributed toward the education of others.
 The Tax Court ruled that petitioners had the burden of disproving that the transfers were intended by the decedent as a substitute for testamentary disposition and so were "in contemplation of death." The Court then pointed out that "the record fails to show just why the decedent created these 23 trusts, * * * why he chose to transfer to those trusts common stock of Reeves Brothers, Inc., which had never paid any dividends, or why no dividends were ever paid on the stock up to the date of the decedent's death. * * *" The Tax Court also said that "the evidence does not show that [decedent] lost control of the corporation at any time prior to his death but indicates, on the contrary, that he remained in control. There were substantial earnings on the stock. The record fails to show any reason why dividends could not have been paid on the common stock beginning at least in 1937." Noting the testimony concerning decedent's inter vivos help to his family, the Tax Court remarked that "* * * that attitude and disposition on the part of the decedent is of little aid in so far as the contemplation of death issue is concerned. The unexplained creation of the inactive trusts was in sharp contrast to his actions on other occasions. The trusts did not help any of the beneficiaries during his life. It is not at all apparent how such trusts were connected with life rather than with death. The decedent may, for all that appears, have intended that the trusts would remain inactive and no income would be received by them as long as he lived. They could thus serve as a substitute for testamentary disposition of a large part of his property to persons who were the natural objects of his bounty."
 Holding, then, that petitioners had failed to bear their burden of proof, the Tax Court affirmed the Commissioner's determination. From that decision petitioners here seek review.
 Lee McCanliss, New York City (Fred L. Van Dolsen, Washington, D. C., John E. Higgiston, Jr., New York City, of counsel) for petitioners.
 C. Oliphant, Washington, D. C., Theron Lamar Caudle, Washington, D. C. (Ellis N. Slack, A. F. Prescott and Carlton Fox, Washington, D. C., of counsel) for respondent.
 Before L. HAND, Chief Judge, and GOODRICH and FRANK, Circuit Judges.
 FRANK, Circuit Judge.
 
 
 1
 Transfers intended as substitutes for testamentary disposition are, of course, "in contemplation of death."[1] And the burden of disproving the Commissioner's determination was on the petitioners. First Trust & Deposit Co. v. Shaughnessy, 2 Cir., 134 F.2d 940.
 
 
 2
 His determination here rested upon the fact that Reeves Brothers, Inc., did not pay any dividends on its common stock until after decedent's death, although the company's earnings statements and balance-sheets strongly suggest an ability to do so. From this fact, and from decedent's always powerful, if not always mathematically controlling, interest in the corporation, the Commissioner referred an intent not to pay dividends so long as decedent managed the affairs of the corporation. In the light of this intent, the Commissioner argued, decedent's transfer of his stock to the trusts can only be construed as a substitute for testamentary disposition.
 
 
 3
 The Commissioner's inference might have been disproved in a number of ways: Petitioners might have demonstrated, for example, that business reasons forbade payment of dividends, or that after decedent transferred the stock to the trust he lost effective control of the corporation. But the record is bare of any explanation which makes the Commissioner's position seem unreasonable.
 
 
 4
 Nor does such a conclusion imply that decedent, by holding back dividends, betrayed his fiduciary obligations to the minority stockholders. For all that the record shows, the minority stockholders might have been quite content to leave their holdings as a cumulating investment.
 
 
 5
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 United States v. Wells, 283 U.S. 102, 116, 51 S.Ct. 446, 75 L.Ed. 867; Allen v. Trust Co. of Georgia, 326 U.S. 630, 635, 66 S.Ct. 389, 90 L.Ed. 367