Estate of Elizabeth Wells Larzelere, The Florida National Bank of Jacksonville and L. J. Larzelere, Executors v. Commissioner.
Estate of Larzelere v. Commissioner
Docket No. 38497.
United States Tax Court
T.C. Memo 1954-35; 1954 Tax Ct. Memo LEXIS 209; 13 T.C.M. (CCH) 455; T.C.M. (RIA) 54146; May 12, 1954, Filed *209 Warren F. Wattles, Esq., Greenleaf Building, Jacksonville, Fla., for the petitioner. A. E. Carpens, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The respondent determined a deficiency of $29,284.33 in estate tax. The issues are: (1) whether the respondent erred in including in the gross estate the value of property transferred by decedent to a trust as a transfer made in contemplation of death; (2) in the alternative, is the value of a trust executed by the decedent's husband on the same date includible in the decedent's gross estate under the reciprocal trust doctrine; and (3) whether the amount of $1,250 paid to attorneys for legal services rendered to the estate is a proper deduction in determining decedent's net taxable estate. Findings of Fact The Florida National Bank of Jacksonville and L. J. Larzelere are the executors of the Estate of Elizabeth Wells Larzelere, deceased. The decedent was born on July 28, 1881, and died November 1, 1948, at the age of 67. Her husband, L. J. Larzelere, was born August 8, 1869. On December 23, 1941, the decedent transferred to an irrevocable trust 426 shares of Farquhar Machinery Company *210 stock. The income was to be paid to the decedent's husband for life, with remainders over to their children and grandchildren, and with the ultimate possibility of descending to St. Luke's Hospital, Jacksonville, Florida. On the date of the transfer the value of the trust corpus was $55,128.60. On December 23, 1941, the decedent's husband also executed an irrevocable trust under which the decedent was to receive the income for life, with remainders over to their children and grandchildren, and with St. Luke's Hospital an ultimate possible beneficiary. The value of the trust corpus was $58,765 on the date of the transfer. On the date of decedent's death, November 1, 1948, the value of the corpus of the trust which she created was $95,488.06, which amount the respondent included in the gross estate of the decedent. The value of the property transferred to the trust created by decedent's husband was $74,862.91 on November 1, 1948. The total value of the decedent's gross estate on November 1, 1948, as reported in the federal estate tax return, exclusive of the value of the trust corpus, was $201,702.23. The income of the trust created by the decedent has been paid to her husband. *211 The income of the trust created by L. J. Larzelere was paid to the decedent until her death and since her demise has been paid to the settlor's children, share and share alike. In 1941, and in prior years, the decedent visited her doctor three or four times a year. In 1944 she was suffering from a physical condition which a number of doctors had difficulty in diagnosing. She was a patient at the Mayo Clinic. A clinic report in 1946 diagnosed her condition as chronic anemia. Her death was caused by arteriosclerotic heart disease. The decedent's husband, in 1936, had an operation. His condition was diagnosed as chronic prostatitis. In approximately 1940 L. J. Larzelere was advised by his physician that he had a heart condition. The physician instructed him to watch his living habits and to work only a half day. Since 1940 L. J. Larzelere has led a very temperate life. Prior to December 23, 1941, W. H. Goodman, vice president and trust officer of the Florida National Bank of Jacksonville, Florida, spoke to L. J. Larzelere about setting up a trust which would take care of conditions not covered by a prior will and which would save estate taxes. L. J. Larzelere talked it over with *212 his wife who thought that if a trust was advantageous to her husband it might be good for her also. L. J. Larzelere talked it over further with Goodman and asked that Goodman put the information in writing. On November 13, 1941, Goodman submitted a letter wherein it was suggested that by having trusts set up by both L. J. Larzelere and his wife there would be a possible savings in estate taxes in the amounts of $12,950 and $24,086, respectively. After the receipt of Goodman's letter the decedent and her husband gave consideration to the matter and set up the two aforementioned trusts. On January 19, 1942, the decedent executed her will. Aside from certain specific bequests the bulk of her property was devised in trust. The provisions of the testamentary trust were substantially the same as those of the inter vivos trust and the property was to descend in an identical manner and to the same objects of her bounty. On the same date the decedent's husband executed his will creating a trust under which the property was to descend to the same beneficiaries in similar manner to the trust agreement of December 23, 1941. The dominant motive of the decedent in making the transfers in trust *213 on December 23, 1941, was for the purpose of avoiding estate taxes and the transfers were in contemplation of death. Attorney fees for legal services rendered to the estate of the decedent in the amount of $1,250 were paid subsequent to the filing of the estate tax return. The amount paid was reasonable. Opinion LEMIRE, Judge: The question presented is whether the transfers to an irrevocable trust executed by the decedent on December 23, 1941, were made in contemplation of death within the purview of section 811(c)(1)(A) of the Internal Revenue Code. While the respondent offered some evidence as to the decedent's age and health at the time of the transfers, we do not think the record establishes that the trust was executed because of any apprehension of imminent death. A transfer is made in contemplation of death if the thought of death is the impelling cause. If the decedent becomes concerned about what will happen to his property at his death and as a result takes action to control or in some manner to affect its devolution, the statute is satisfied. Allen v. Trust Co. of Georgia, 326 U.S. 630. The decedent's husband testified that *214 one of the purposes the decedent had in executing the trust agreement was to save on estate taxes. Other witnesses testified that when the matter was under investigation by revenue agents the decedent's husband testified that decedent was solely motivated by a desire to save estate taxes. No evidence was offered of any motive associated with life. Viewing the record in its entirety, we are of the opinion that it amply supports our ultimate finding of fact that the dominating motive of the decedent in making the transfers in trust was to avoid estate taxes, and that the transfers were made in contemplation of death within the purview of section 811(c)(1)(A) of the Code. See Estate of Frank A. Vanderlip, 3 T.C. 358, affd. 155 Fed. (2d) 152 (C.A. 2). In view of our holding it is unnecessary to discuss the respondent's alternative theory. We, therefore, sustain the respondent's action in including in the decedent's gross estate the value of the property transferred to the trust established on December 23, 1941. The remaining question presented is whether attorney fees in the amount of $1,250, incurred and paid on behalf of the decedent's estate, constitute *215 a proper deduction in determining the net taxable estate. The legal fees in question were not claimed as a deduction in the estate tax return but the issue is raised in the petition filed herein. The respondent in his answer denies the claim for lack of substantiation. On brief, the respondent does not contest the allowance of the attorney fees to the extent that this Court finds they are reasonable. The evidence establishes the fact that payment of $1,250 was made to the attorneys for legal services rendered to the estate. We have found that the amount paid was reasonable. We, therefore, hold that the sum of $1,250 paid for legal services rendered to the decedent's estate constitutes a proper deduction in determining the decedent's net taxable estate. Decision will be entered under Rule 50.