E. P. METZGER, Executor of the Estate of George F. Metzger, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 8155.

United States District Court
N. D. Ohio, W. D.

March 18, 1960.

John W. Yager, Toledo, Ohio, for plaintiff.

Russell E. Ake, U. S. Atty., Cleveland, Ohio, Richard M. Colasurd, Asst. U. S. Atty., Toledo, Ohio, Charles K. Rice, Asst. Atty. Gen., James P. Garland, Jerome Fink, Robert H. Kapp, Attys., Dept. of Justice, Washington, D. C., for defendant.

KLOEB, Chief Judge.

Plaintiff, as executor of the estate of George F. Metzger, deceased, brings this action against the United States of America to recover $12,795.15 of estate taxes and interest claimed to have been erroneously and illegally assessed and collected by defendant from plaintiff under provisions of the Internal Revenue Code of 1939, as amended, (Title 26, U.S. C.).

The question presented is whether or not three certain inter vivos gifts made by decedent during the year 1951, and approximately eighteen months prior to his death, were includable in his gross estate as gifts made in contemplation of death within the meaning of Section 811 (*l*) of the Internal Revenue Code of 1939, and Section 81.16 of Regulation 105, as Amended.

Section 811(*l*) reads as follows:

"(1) Contemplation of death. If the decedent within a period of three years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property * * * such transfer * * * shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of subsections (c) (d) and (f); * * *".

Section 81.16 of Regulation 105, as Amended, reads as follows:

"Section 81.16. Transfers in contemplation of death.—

"a) *In general.* Transfers in contemplation of death made by the decedent after September 8, 1916, other than bona fide sales for an adequate and full consideration in money or money's worth, must be included in the gross estate. A transfer in contemplation of death is subject to the tax although the decedent parted absolutely and immediately with his title to, and possession and enjoyment of, the property.

"The phrase 'contemplation of death', as used in the statute, does not mean, on the one hand, that general expectation of death such as all persons entertain, nor, on the other, is its meaning restricted to an apprehension that death is imminent or near. A transfer in contemplation of death is a disposition of property prompted by the thought of death (though it need not be solely so prompted). A transfer is prompted by the thought of death if it is made with the purpose of avoiding the tax, or as a substitute for a testamentary disposition of the property, or for any other motive associated with death. The bodily and mental condition of the decedent and all other attendant facts and circumstances are to be scrutinized to determine whether or not such thought prompted the disposition.

"b) *Estates of decedents dying after September 23, 1950.* In the case of a decedent dying after September 23, 1950, any transfer without an adequate and full consideration in money or money's worth made by such a decedent within a period of three years ending with the date of his death is, unless shown to the contrary, deemed to have been made in contemplation of death. However, no transfer by such a decedent if made prior to such three-year period is considered to have been made in contemplation of death. * * *".

It is plaintiff's contention that two gifts to the son Herbert Metzger, to wit, 490 acres of marsh land and adjoining beach property valued at $25,000.00, and gifts involving the purchase of a home

for the son totaling $21,838.78, and one gift to the daughter Anna May Timmons, to wit, 1,020 common shares of Peninsular Telephone Company valued at $40,800, were primarily motivated by the lifetime objectives of the decedent and not by thoughts of death; that they were not made as a substitute testamentary disposition; that the age and health of decedent were not such as to indicate that he was concerned with thoughts of death; that his actions and attitude indicated he was concerned with living, not dying; that, therefore, none of the gifts in question were made in contemplation of death within the meaning of the Code Section and Regulation.

It is defendant's contention that, under the provisions of the Statute and Regulation, plaintiff has the burden of affirmatively establishing living motives on the part of the decedent, and that he has failed of his burden; that there is ample evidence to support the conclusion that the gifts made by the decedent were regarded by him as substitutes for testamentary disposition.

George F. Metzger died on May 11, 1953, at the age of 58 years. For a number of years before his death, he was a retired business man, and was possessed of considerable wealth in stocks, bonds, real estate and insurance. At his death, his gross estate, including the three gifts in question, was appraised by the Internal Revenue Service at approximately $948,413.92. The gifts in question total $87,638.78 in value, or less than 10% of the gross estate of the decedent.

George F. Metzger was survived by his wife Rose I. Metzger, a son Herbert Metzger, 28 years of age, and a daughter Anna May Timmons, 26 years of age. More than fifteen years before he died, he disposed of his business and thereafter devoted his time in the management and operation of a 66 acre farm and the adjoining marsh property and in managing his investments. He had no need to work and, from the evidence, he appeared to be a good-natured and jovial individual, who worried little about himself, his health or his business. In his latter years, he became addicted to alcohol and this addiction, in time, brought on a sclerosis of the liver and an anemic condition that resulted from a reliance upon liquor instead of food.

His daughter Anna May Timmons was a school teacher. She closed her college career in 1947 and thereafter, in August of 1950, she married Mr. Timmons, who was also a school teacher. Jointly they purchased a home in Redfield, Michigan, in 1950. Mrs. Timmons continued to teach school for two years after her marriage at a salary of about $3,000 a year. She quit teaching in June of 1952 to give birth to her first child. The income of Mr. and Mrs. Timmons for the year 1950 amounted to $6,770.50, for the year 1951, $7,671, for the year 1952, $9,809, and for the year 1953, $8,676. This income included dividends from certain stocks which had been given to her by her father.

Herbert Metzger, the son, entered Wittenberg College in September of 1941, and from thence went to the Michigan State University, from thence to the Army, and then again to Michigan State University, from which he was graduated in March of 1948. He majored in and received a Master's Degree in soil science in preparation for teaching vocational agriculture. In June of 1951, upon the completion of his college courses, he married. In July of 1951, he moved to Racine, Wisconsin, to accept employment. His employment produced a very modest income amounting to the sum of $2,841.12 for the year 1951. In October of 1951, he returned to Toledo and eventually began to teach vocational agriculture.

In April of 1947, the deceased gave his daughter 330 shares of American Home Products stock as a graduation gift from college. In July of 1950, he gave her 100 shares of Peninsular Telephone Company stock. In February of 1951, he gave her 100 shares of General Electric stock. These gifts apparently were given as wedding gifts and graduation gifts and in order to supplement her income. None of these gifts are questioned by defend-

ant in this action. The subsequent gift on October 15, 1951, of 1,020 shares of Peninsular Telephone Company stock is questioned. This gift was made approximately eighteen months before the death of the father.

For many years, the deceased had owned a farm of 66 acres and a marsh land of about 490 acres adjacent thereto. When the son Herbert was in high school, the deceased and his wife discussed giving this farm and marsh property to the son as soon as he was able to manage it. In January of 1951, the transfer of the whole title to the farm of 66 acres was made to the son. This transfer is not questioned in this action. On November 16, 1951, the father deeded the marsh land of approximately 490 acres to the son. This transaction is questioned. In addition thereto, in the early Fall of 1951, the father and mother induced the son Herbert to return from Racine, Wisconsin and make his home in Toledo by promising to buy him a home for himself and his wife. Herbert moved into the home purchased by the father on October 15, 1951. This home was purchased with payments made by the father in the sum total of $21,838.78. These payments are questioned.

George F. Metzger died of heart failure about a year and a half after the gifts in question. He suffered a heart attack on March 18, 1953, and died from the second attack on May 11, 1953. There had been no previous diagnosis of a heart condition. In 1947, he had undergone a thyroidectomy and, in 1949, an appendectomy. He made good recovery from both of these operations. For some years prior to his death, he made frequent trips to his family physician for "shots" to rehabilitate the anemic condition of his blood due to alcoholism. Prior to his first heart attack, the record indicates that he was generally in good health and active in the supervision of his farm and marsh lands. In February of 1952, he purchased a ranch type home located a short distance from the home that he had purchased for his son.

The record indicates that the deceased came from a long-lived family and, therefore, unless conscious of failing health, had every expectation of living a good many years beyond his allotted 58. His father died at age 79, his mother at age 83 and a brother Homer at age 71. At the time of his death, he left a living brother Edward, 55 years of age, a sister Mary, 70 years of age, and a sister Louise, 65 years of age.

On October 30, 1951, the deceased made his last will and testament, in which he left substantially all of his estate to his wife Rose I. Metzger. Item IV of the will read as follows:

"In making this Last Will and Testament, I have borne in mind the fact that, separate and apart from it, I have heretofore made provision for both daughter and son; and, in vesting my residuary estate in my wife, Rose I. Metzger, I have done so well knowing her affection for our children and that she will never let them be in want".

It is the contention of the defendant that the wording of this Item IV indicates that the three gifts in question were made with a testamentary intent.

The will was drawn by Mr. Ira R. Cole, a lawyer, whose office was in the same building as the office of Mr. Metzger's accountant. Mr. Cole was summoned by the accountant at the request of Mr. Metzger. Mr. Metzger had not known Mr. Cole previous to this meeting. In the deposition of Mr. Cole, and on page 9 thereof, we find the following:

"Q. Referring to Item IV of the will, Mr. Cole, would you be able to state the reason that you included that item in the will of Mr. Metzger? A. I always make that reference. That is my own verbiage, and I always make some reference in every will where there are children, that if they have not been provided for in some fashion or other I ask

questions about it. I always feel that it is best in making out these wills to have something in there with reference to the children so that the children cannot say that, 'Well, dad didn't even think of us when he made his will', or 'He thought of us'.

"By putting that in there it tells the children that dad did think of them, that he had already made provisions for them, or whatever I said in here".

From a review of the record, a study of the briefs and citations offered therein, we conclude that the plaintiff has satisfied his burden of affirmatively establishing living motives on the part of the decedent, and that the gifts made by the decedent and in question here were not made in contemplation of death.

We conclude that the decedent, in making these gifts, was not motivated by thoughts of death, but was motivated by a desire to create and maintain good family relations by affording financial assistance to his children, both of whom had recently married, to carry out promises and plans that were unconnected with a thought of impending death, and to provide a home for his son near him, and an adequate income for his daughter.

In arriving at these conclusions, we have found the case of United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867, to be very helpful. This case is also followed with approval by Allen v. Trust Company of Georgia, 326 U.S. 630, 66 S.Ct. 389, 90 L.Ed. 367.

Judgment against the defendant for the sum of $12,795.15, with interest, as prayed for may be entered.

Plaintiff may within fifteen days prepare and lodge with the Court findings of fact and conclusions of law drawn in accordance with this opinion. Within fifteen days thereafter, defendant may file its exceptions and suggested additions thereto.