Estate of Helen Brown Goodman, Deceased, J. Guthrie Goodman, Jr., and Helen Goodman Thompson, Co-Executors v. Commissioner.
Estate of Goodman v. Commissioner
Docket No. 69215.
United States Tax Court
T.C. Memo 1960-173; 1960 Tax Ct. Memo LEXIS 109; 19 T.C.M. (CCH) 927; T.C.M. (RIA) 60173; August 31, 1960
*109 Held, transfer of her one-half interest in Goodman Brothers Company, a partnership, made by the decedent, within three years of her death, to her son, the owner of the other one-half interest therein, was made in contemplation of death and is includible in her gross estate under section 2035(a) and (b), Internal Revenue Code of 1954. James E. Fahey, Esq. *110 , Kentucky Home Life Building, Louisville, Ky., for the petitioner. Hubert E. Kelly, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: This proceeding involves a deficiency in Federal estate tax in the amount of $9,099.45 determined against the Estate of Helen Brown Goodman. The sole issue remaining is whether decedent's gift to her son of her one-half interest in the Goodman Brothers Company, a partnership, within three years of her death, was made in contemplation of death within the meaning of section 2035(a) and (b), Internal Revenue Code of 1954. Other issues, namely certain valuation questions, have been agreed to by the parties in the stipulation and shall be given effect under the Rule 50 computation. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. Helen Brown Goodman, hereinafter referred to as the decedent, was born on June 25, 1883, and died testate on September 4, 1955, at the age of 72, a resident of Shelbyville, Kentucky. Decedent's estate tax return was filed on June 15, 1956, with the district director of internal revenue for the district of Kentucky. Decedent *111 was survived by four children: J. Guthrie Goodman, Jr., aged 46; Florence Goodman Simrall, aged 44; Mary Goodman Atwood, aged 42; and Helen Goodman Thompson, aged 40; hereinafter referred to by their respective given names. For many years prior to 1939 the decedent's husband, J. Guthrie Goodman, Sr., hereinafter referred to as Goodman, conducted as a sole proprietorship the business of a farm implement sales agency and an automobile sales agency, including the operation and maintenance of a garage for the service, repairs and maintenance of farm machinery and automobiles. This business was carried on under the name of Goodman Brothers Company in a building which was owned by Goodman and located at the intersection of Fifth and Clay Streets, Shelbyville, Kentucky. Goodman Brothers Company was originally started by Goodman and his brother in 1903 and operated as a partnership until 1911 when Goodman's brother died. Originally the business was limited to selling and servicing farm implements and the selling of farm supplies. In 1925, Goodman acquired a franchise to sell and service Chevrolet automobiles and in 1933 he acquired a franchise to sell and service Oldsmobile automobiles. *112 In 1941 Goodman gave up the Chevrolet franchise and thereafter the company sold and serviced Oldsmobiles only. Due to the shortage of automobiles and farm implements brought about by the Second World War, a new activity, the selling of feed and grain, was commenced by Goodman Brothers Company in 1941. Goodman's son, Guthrie, attended Transylvania College in Lexington, Kentucky, graduating in 1930. He majored in chemistry and seriously considered entering this field of endeavor as his life's work. However, he felt that his father would be disappointed if he, being the only son, did not return to Shelbyville to learn the business of Goodman Brothers Company in order that it could be carried on after Goodman was no longer active in it. Goodman had told Guthrie that if he returned to Shelbyville and learned the business, ultimately he would be taken into it as a partner. Upon graduation from Transylvania, Guthrie returned to Shelbyville. Thereafter he was employed by his father in the business and continued as an employee of Goodman Brothers Company until 1939. At that time, Goodman Brothers Company had two operating departments; one involved the sales and servicing of automobiles *113 and the other, farm implements. Guthrie worked in the automobile service department for approximately four years and thereafter was made sales manager of the automobile department. In 1939 Goodman, Guthrie, and Florence's husband, H. Bright Simrall, hereinafter referred to as Simrall, formed a partnership to carry on the automobile sales agency and garage business theretofore carried on by Goodman as a part of his sole proprietorship. Goodman had a one-half interest in this partnership and Guthrie and Simrall each had a one-fourth interest. The partnership carried on its business at the same location where Goodman had operated his sole proprietorship, and was operated in conjunction with the farm implement sales agency which Goodman continued to operate as an individual proprietorship. Prior to the formation of the partnership, Florence and Simrall had lived in California where Simrall had been unsuccessful in a business venture. Goodman wanted his daughter to return to Kentucky and Goodman's proposal to Guthrie that the partnership be formed was at least in part intended to be an inducement for Simrall and Florence to return. Guthrie and Simrall each agreed to buy their one-fourth *114 interest in the partnership out of the profits of the business and each was to receive a salary of $150 per month. Goodman died on August 11, 1944. His interest in the proprietorship which conducted the farm implement sales agency and his interest in the partnership which conducted the automobile sales agency and garage and the feed and grain business, together with all other property owned by Goodman at his death, were bequeathed to the decedent. Goodman's will, executed on August 4, 1934, as probated by the Shelby County Court, Shelbyville, Kentucky, on August 16, 1944, after providing for the payment of his just debts and funeral expenses, provided in item 2: All of the remainder of my property of whatever kind or character both real and personal I hereby will, bequeath and devise to my beloved wife, Helen B. Goodman, to be hers absolutely to do with as she pleases. Following Goodman's death Guthrie and Simrall decided to continue operating the business as it had been prior to Goodman's death. The decedent was not interested in taking an active part in the business. As a result of certain disagreements between Guthrie and Simrall, Simrall's interest was purchased by the partnership *115 for approximately $1,200 and Simrall, on January 1, 1945, withdrew from participation in the partnership. Upon Simrall's withdrawal from the partnership, a new partnership was formed with the decedent and Guthrie as partners, each with a one-half interest therein, to carry on the farm implement sales agency theretofore conducted by Goodman as a sole proprietorship and the automobile sales agency and garage and the grain and feed business theretofore conducted by the old partnership. Guthrie gave a note to the decedent in the amount of $9,622.97 in order to equalize their capital accounts in the partnership. Thereafter Guthrie and the decedent were equal partners in Goodman Brothers Company. Guthrie made periodic payments on his note until 1953 when it was fully paid off and retired. The new partnership operated under the firm name of Goodman Brothers Company and conducted its business at the same location in Shelbyville where its business had previously been conducted. The decedent took no active part in the business, although upon occasion when the partnership needed money she, together with Guthrie, jointly borrowed money. The decedent and Guthrie operated the partnership until *116 December 24, 1953. In the fall of 1953 the decedent told Guthrie that she was going to give him her interest in the Goodman Brothers Company partnership. At that time all of the decedent's children were at home in Shelbyville and she called them together to find out how they wanted her property to be divided in the event of her death. None of the decedent's daughters had ever expressed any interest in having a part of Goodman Brothers Company and they knew that eventually the company would be Guthrie's. However, the decedent wanted her children to share alike in her estate and for each of them to have a piece of real property. On December 24, 1953, the decedent gave her one-half interest in the Goodman Brothers Company partnership to Guthrie. On the same day, simultaneously with the execution of the deed of gift to Guthrie conveying her partnership interest, the decedent executed her last will and testament which reads, in pertinent part, as follows: Item One. It is my will my executor herein designated pay my legal obligations. Item Two. After satisfaction of item one hereof, I hereby give, devise and bequeath my home in Shelbyville, Kentucky, in which I now reside to my daughter, *117 Helen Goodman Thompson. Item Three. After satisfaction of item one hereof, I hereby give, devise and bequeath all my farm lands in Shelby County, Kentucky, together with all livestock, provender, farming implements and tools and chattels used in the operation thereof to my daughters, Florence Goodman Simrall and Mary Goodman Atwood, share and share alike. Item Four. It is my will there be no sale of my personal effects, household furniture and household fixtures. Therefore, I do direct my executor to permit my four children namely: Helen Goodman Thompson, Florence Goodman Simrall, Mary Goodman Atwood and Guthrie Goodman, to divide the same among themselves according to the wishes of said children. And it is my hope and prayer there be no disagreement concerning the division thereof. It is my further wish that my said children be not charged with any part of my said personal effects, household furniture nor fixtures so received by them in said division in the final settlement of my estate. Item Five. After satisfaction of all the foregoing provisions it is my will and I hereby direct my personal representatives to convert the residue of my property, real, personal or mixed, to *118 cash same to constitute a fund to be used for the following purposes: (a) To pay all taxes due by my estate. (b) To pay the cost of administration upon my estate. (c) To pay all valid liens against all my property. (d) That the appraised value of each parcel of real estate and personal property (exclusive of personal effects household furniture and fixtures) devised and bequeathed to my three daughters namely: Helen Goodman Thompson, Florence Goodman Simrall and Mary Goodman Atwood under items two and three hereof be supplemented by a sufficient amount of money from said fund to make said three daughters each equal subject only to the modification contained in this paragraph. Should the net portion of my estate received by each daughter (exclusive of personal effects, household furniture and fixtures) exceed the sum of $29,000.00 then in that event I direct my personal representative and empower them to deduct from each daughter's share one-fourth of the excess over and above the sum of $29,000.00 to each daughter and pay the same to Guthrie Goodman. Said one-fourth of the excess over and above $29,000.00 to each daughter shall constitute a lien against the property bequeathed *119 and devised to each daughter under this my last will and testament. The book value of decedent's partnership interest on December 24, 1953, was $24,461.65, which was also its fair market value on September 4, 1955, the date of decedent's death. In order to assure that each of her children would share equally in her estate, the decedent on August 15, 1954, executed a codicil to her will which provides as follows: "I want this added to my Will if I don't get it rewritten. Having given My son my share of the Auto and Implement business, I want like amounts to go to each of my three girls then the rest of my estate to be divided evenly between the four children, Guthrie, Florence, Mary and Helen. "My estate is to be administered with out bond. "The rest of my Will to be administered as written by Judge Reed, unless some heir is dissatisfied - in which case, They are to be given $5.00 and their share to be divided among the others who are willing to abide by my will which I have tried to divide evenly." The decedent was a small-framed woman, approximately 5 feet 4 inches tall. For many years she had been subject to extreme overweight and an arthritic condition. She was a cheerful *120 person who never complained about herself. She was active in church affairs, and was an active member of a book club and a canasta club. Decedent died of a coronary thrombosis, the apparent result of myocarditis. Decedent's gift to her son on December 24, 1953, of her one-half interest in Goodman Brothers Company was made in contemplation of death. Opinion Respondent has determined that decedent's transfer on December 24, 1953, within three years of her death, of her one-half interest in Goodman Brothers Company, a partnership, to her son Guthrie, the owner of the other one-half interest therein, was made in contemplation of death and is includible in her gross estate under section 2035(a) and (b), Internal Revenue Code of 1954. [1]
*121 Petitioner maintains that at the time of Guthrie's graduation from college decedent's husband had promised Guthrie that he would eventually be taken into the business as a partner and given an interest therein. Petitioner contends that the questioned transfer was dominantly motivated by decedent's desire to fulfill her deceased husband's promise and that a transfer in pursuance of such a desire represents the discharge of a moral obligation, which, in turn, constitutes a dominant life motive. We do not agree with petitioner's position. Whether or not a given transfer is made in contemplation of death is dependent upon the transferor's dominant, controlling, or impelling motive. If the dominant motive actuating the transfer is associated with thoughts of death, rather than with concerns of life, or is of the sort which leads to testamentary disposition, the transfer is considered as having been made in contemplation of death and the value of the property transferred is includible in decedent's gross estate. The ascertainment of such dominant motive is a question of fact requiring an exploration of decedent's state of mind in light of all attendant circumstances. See United States v. Wells, 283 U.S. 102 (1931); *122 Allen v. Trust Co., 326 U.S. 630 (1946). Shortly prior to the questioned transfer decedent called all of her children together for the purpose of determining how the assets of her estate were to be distributed among them upon her death. Decedent was concerned about the fair and equal distribution of her estate and by having the meeting she hoped to ascertain her children's preferences. Thereafter, decedent apparently had her attorney prepare the deed giving her partnership interest to Guthrie and her will wherein she devised other parcels of real estate to her three other children. The deed and the will were executed simultaneously on December 24, 1953. The will did not contain any specific bequests of real estate in favor of Guthrie, but it did provide under Item Five (d), after allowing for the equalization of the specific bequests to the three daughters, that "Should the net portion of my estate received by each daughter * * * exceed the sum of $29,000.00 then in that event I direct my personal representative and empower them to deduct from each daughter's share one-fourth of the excess over and above the sum of $29,000.00 to each daughter and pay the same to Guthrie *123 Goodman." While decedent may have thought that by deeding her partnership interest to her son she was carrying out the wishes of her deceased husband, it is evident from a consideration of the will and of the deed of gift, executed on the same date, that she was in fact concerned with achieving an equal distribution of all her property, including the partnership interest, among her four children. Having deeded her son the partnership interest, she then undertook by will to make equal distribution to her three daughters by devising her home place to one daughter and the farm property to the other two. Any estate remaining after such specific devises was to be converted into a residuary fund which was to be applied first, after the payment of taxes, expenses, etc., to supplement the appraised value of the real estate and personal property specifically devised to the three daughters in order to make them equal recipients. That an equal distribution of all her property was intended by the decedent is also evidenced by the provision in the will that should the net portion of her estate received by each daughter exceed $29,000, one-fourth of such excess over $29,000 should be deducted *124 from each daughter's share and paid to Guthrie. While it has been stipulated that the book value of decedent's partnership interest on December 24, 1953 (the date of the deed of gift), as well as the fair market value of such interest on September 4, 1955 (the date of decedent's death) was $24,461.65, decedent apparently considered the partnership interest to be worth more, or, by giving Guthrie immediate possession of the partnership interest, she thought she was achieving equalization of all her property among her four children. That an equal division among her four children of all her property, including the partnership interest, was the dominant purpose and intent of the decedent, is further emphasized by the codicil to her will wherein she provided that "Having given my son my share of the Auto and Implement business, I want like amounts to go to each of my girls, then the rest of my estate to be divided evenly between the four children, Guthrie, Florence, Mary and Helen." The conference which decedent held with her children, the execution of the will and deed of gift simultaneously shortly thereafter, and the terms of the will and of the codicil thereto, when viewed in light *125 of decedent's age, physical condition, and her patent emphasis upon the equal distribution of her estate among her four children, are all convincing indications that the questioned transfer was dominantly motivated by thoughts of death and was that sort of substitute for a testamentary disposition which the contemplation of death provisions were designed to preclude. In short, the questioned transfer was but one step in an integrated plan for the over-all testamentary disposition of decedent's estate. Accordingly, we hold that the transfer in question was made in contemplation of death and that the value thereof is includible in decedent's gross estate. We do not agree with petitioner's argument that decedent's transfer was actuated by her desire to fulfill a promise which her deceased husband had made to Guthrie. To begin with, the precise nature of the promise is not clear. Concededly, there seems to have been some sort of understanding that Guthrie would eventually be taken into the business as a partner. The record, however, does not establish either the nature or scope of the understanding, or the manner in which it was to be fulfilled. In this connection, it is to be noted *126 that prior to his father's death Guthrie had by purchase already become the owner of a one-fourth interest in the business. Furthermore, the fact that Guthrie's father left his entire estate to the decedent, without any express provision for Guthrie does not indicate an intention that the business be given to Guthrie. Finally, Guthrie's purchase of a one-fourth interest in the partnership and his subsequent payment of $9,622.97 to his mother in order to equalize their interests in the Goodman Brothers Company belie both the broad donative intent which petitioner attributes to Guthrie's father and the feelings of moral obligation which it ascribes to the decedent. Decision will be entered under Rule 50. Footnotes
1. SEC. 2035. TRANSACTIONS IN CONTEMPLATION OF DEATH. (a) General Rule. - The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death. (b) Application of General Rule. - If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment); but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death.↩