Estate of Benjamin Beurman, Deceased, Michael K. Torf and Alan B. Goldberg, Executors v. Commissioner.
Estate of Beurman v. Commissioner
Docket No. 5360-63.
United States Tax Court
T.C. Memo 1965-114; 1965 Tax Ct. Memo LEXIS 216; 24 T.C.M. (CCH) 599; T.C.M. (RIA) 65114; April 27, 1965
John H. King, for the petitioners. Robert B. Dugan, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined a deficiency in estate tax of Benjamin Beurman, Deceased, in the amount of $4,683.13. The issue is whether gifts of stock by Benjamin Beurman, valued at $26,000, made within three *217 years of his death are includable in his gross estate under section 2035, Internal Revenue Code of 1954. [1]
Findings of Fact Some of the facts have been stipulated and they are found accordingly. Benjamin Beurman, a resident of Massachusetts, died on May 5, 1959 at the age of 59. He had been a widower since 1950 and his will, which was duly probated in Massachusetts, left his entire estate (except for $500a legacy to a brother) to his only children, Lois D. Torf and Barbara Goldberg. The will appointed their husbands, Michael K. Torf and Alan B. Goldberg, as executors. The Federal estate tax return (Form 706) for the estate was filed with the district director of internal revenue in Boston. It reported on Schedule "O" a total gross estate of $79,650.01 and the return as filed showed a net estate tax payable of $932.35. The return disclosed on Schedule G transfers by the decedent within three years of the date of his death of shares of preferred stock of Wintex, Inc. having a total value of $26,000. These transfers were not included by the executors *218 in the gross estate of the decedent but were treated as not taxable. Respondent determined that these transfers of Wintex corporation stock, having a total value of $26,000, were made in contemplation of death and hence includable in decedent's gross estate. The decedent was the chief executive officer of Wintex, Inc., a Massachusetts corporation which was in the business of jobbing plastic products. The controlling stock interest in Wintex, Inc. was owned by Massasoit Plastic and Leather Co., a Massachusetts corporation, substantially all of the stock of which was owned by the decedent. For several years prior to July 1957 there had been a liability of $26,000 owed to the decedent by Wintex, Inc. for money advanced by him to the corporation. In July 1957 Wintex, Inc. was recapitalized so as to eliminate the $26,000 liability due to decedent and to create $26,000 of 7 percent noncumulative $100 par value preferred stock. The provisions pertaining to this stock authorized the directors to declare an additional dividend of up to $7 per share in any year in which the corporation's net earnings exceeded $10,000; accordingly, in such year dividends of $14 per share could have been paid *219 on the preferred stock. Actually no dividends were ever paid on this stock. Two hundred sixty shares of the said preferred stock were issued to the decedent in July 1957. On December 26, 1957 the decedent made gifts of the said preferred stock. Twenty-five shares were given to each of his two daughters, two sons-in-law and four grandchildren. On February 13, 1958 the remaining 60 shares were given to the same donees: eight shares to each of the adults and seven shares to each of the minor children. Sometime in 1955 when deceased was about 55 years old he was examined by a Doctor Levine who made a diagnosis that he had angina pectoris and hypertensive heart disease. The doctor prescribed and deceased used nitroglycerin for the relief of paid. Deceased was an energetic, hardworking individual. There was no substantial change in his activities during the period after he learned of his heart ailment. On Friday, May 1, 1959, decedent was living with his daughter Lois Torf. He took sick and Dr. Lehr was called and he diagnosed his illness as pneumonia but not sufficiently severe as to require hospitalization. He was treated with penicillin and he remained in bed at his daughter's house. *220 He died in his sleep the following Tuesday. He died so suddenly that Dr. Lehr and his daughters arranged for a postmortem examination to determine the cause of his death. The autopsy was performed and the cause of his death was found to be a myocardial infarct. The autopsy report stated that a number of old infarcts were also found. Neither Dr. Lehr nor decedent knew that he had suffered prior infarcts. Opinion Petitioner-estate recognizes its burden of showing that the thought of death was not the impelling cause of decedent's gifts of stock to his daughters, sons-in-law and grandchildren. Section 2035(b). [2]
*221 The phrase "in contemplation of death" has been considered in a long line of decisions, all more or less to the same general effect. For the purpose of this case the discussion of governing principles in Allen v. Trust Co. of Georgia, 326 U.S. 630 will suffice. There the Supreme Court said: The transfer is made in contemplation of death if the thought of death is the "impelling cause of the transfer." * * * The transfer may be so motivated, even though the decedent had no idea that he was about to die. * * * On the other hand, every man making a gift knows that what he gives away today will not be included in his estate when he dies. All such gifts plainly are not made in contemplation of death in the statutory sense. Many gifts, even to those who are the natural and appropriate objects of the donor's bounty, are motivated by "purposes associated with life, rather than with the distribution of property in anticipation of death." United States v. Wells, supra, 283 U.S. at page 118, 51 S. Ct. at page 452, 75 L. Ed. 867. * * * Petitioner argues it sustained its burden of affirmatively showing that the stock transfers in question here were not made in contemplation *222 of death. We agree. The evidentiary record consists of the testimony of decedent's two daughters, Alan Goldberg, decedent's attorney who is married to Alan Goldberg's sister, and Doctor Lehr, and the written evidence of Doctor Levine. All of the evidence shows decedent was, throughout his life, a cheerful, energetic, hard-working individual who tended to ignore all physical ailments. He played golf and he also traveled a good deal in connection with his business. There is no indication that the diagnosis of heart trouble in 1955 created an immediate or impending fear of death. Dr. Levine, who saw him twice a year, said he had made an "excellent mental adjustment" to his heart illness. The record shows he took his medication, made some half-hearted attempts to reduce a little and went right on working about 10 to 12 hours a day. There is just nothing in the factual situation that indicates decedent suddenly decided in late 1957 that he should divest himself of his property for estate tax reasons, or to avoid its passing under his will. In fact, the record affirmatively shows that the transfers were associated with a contemplation of living. It was the corporation's accountant *223 who first suggested to decedent that he eliminate the $26,000 liability to him that his corporation was carrying by creating preferred stock. When decedent visited with his attorney about this, the attorney told him that such preferred stock would permit gifts with pre-tax dollars. His attorney testified that decedent came to his house one Sunday morning and they visited about the income tax savings that would result if the preferred stock was created and then given away instead of making gifts of after-tax corporate earnings. It was the attorney who suggested the individual gifts be made in amounts of under $3,000 in one year. The gifts of all of the stock were made in a series of gifts in 1957 and 1958 in order to avoid filing gift tax returns. The attorney testified decedent was anxious to funnel some of the earnings of the corporation to his children and cut down his income tax. That is why the stock carried not only a 7 percent noncumulative dividend provision but also an additional 7 percent if the company's earnings exceeded $10,000 in any one year. This attorney who drew decedent's will in 1954 said the question of estate tax on his estate was never discussed and, in fact, *224 the decedent's evaluation of his estate at that time indicated decedent did not feel he had any estate of consequence. In 1954 when the attorney drew the will he was told of decedent's property and his interest in Wintex Co. and decedent then estimated his estate at around 50 or 60 thousand dollars. In 1957 when decedent discussed the gifts of stock with the attorney the subject of estate taxes was not mentioned - only income taxes. It fairly appears that decedent considered Wintex Co. a one-man business that he alone could successfully operate and that he wanted to give his children and their families some of the earnings. These are considerations connected with living. While he had not, prior to the stock transfers, made substantial gifts to his children it cannot be said these gifts were isolated transactions. He made numerous smaller gifts. All of the evidence shows that he was generous with his daughters. He gave them trips and other presents for their homes and sometimes cash in the sum of a hundred dollars on their birthdays. He had given each of his four grandchildren a thousand dollars when they were born. Decedent had made his home with his daughters since the death of *225 his wife. He had great love and affection for them and for their families. As stated, he had consistently displayed his desire to help his daughters and their families by giving them vacation trips and other presents. On one occasion he installed an air conditioning system in one daughter's home at a cost of $2,600. He had given them money and the gifts of stock involved here are but a continuation of prior gifts all motivated by a desire to make complete and absolute gifts to his daughters and their families for their present use, without any thought on the part of decedent that the transfers would affect his estate. While age of itself is not a determining factor, it is to be noted that petitioner was 57 at the time of these gifts. Even though he was ill for some days before his death he had no idea he was about to die. It was not his heart trouble that rendered him sick and incapacitated at the time he died. He was ill with pneumonia and his death was a shock to his doctor and family. Another factor to be considered is decedent's rather modest estate. This suggests that he would not have been very much concerned with the estate tax burden. On the whole record we feel the *226 evidence is sufficient to overcome the statutory presumption that the gifts in question were made in contemplation of death. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. SEC. 2035. TRANSACTIONS IN CONTEMPLATION OF DEATH. * * *
(b) Application of General Rule. - If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment); but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death.↩